In the Matter of the Petition of ANNA M. TIENKEN for an Accounting, etc.

In the Matter of the Final Judicial Settlement of the Accounts of ANNA TIENKEN et al., as Executors, etc.

A testamentary trustee takes simply a legal estate commensurate with the equitable estate bestowed, and outside thereof there may be remainders and future estates, or powers of sale adequate to terminate the trust.

T. by his will gave to his executors his residuary real estate in trust during the life of his wife, directing them to pay to her $2,000 each year and after paying out of the income remaining all taxes, necessary repairs, etc., to "apply the balance or remainder once a year between my children, share and share alike, for their use, benefit and maintenance." *Held*, that the provision did not vest the entire estate in the trustees, but that their estate was limited to the life of the widow; and so, that outside of the trust there was a remainder in fee which in the absence of any disposition thereof in the will went, upon his death, to the heirs of the testator.

The trustees were authorized to sell two specified parcels of the residuary real estate during the life of the widow; in case of such sale, one-third of the net proceeds to remain as a trust fund in the hands of the executors for the benefit of the wife, the remaining two-thirds to be divided, (giving the words of the will) "equally among my children, share and share alike." *Held*, that this power of sale in no manner enlarged or changed the quality of the estate vested in the trustees.

A subsequent clause was as follows: "Whereas in this will is mentioned and described gifts, devises and bequests to my children, if any of them

should be dead leaving issue surviving, I do direct that the issue of any of my children deceased shall take the same share their parent would have received had such parent remained living." *Held*, that the death referred to was a death in the life-time of the testator; that although the clause was unnecessary in view of the protection afforded by the statute (2 R. S. 66, § 52), this would not alter its construction unless some other, making the clause necessary and effective, should be found to be both a possible one and within the testamentary intention.

The will further empowered the executors after the death of the testator's wife, to sell the real estate remaining unsold, and (giving the words of the will) "divide the proceeds equally among my children." The residuary personal estate was given absolutely, one-third to the widow, and two-thirds to the children, again designated as "my children." By a codicil the testator, after reciting that he had made an advancement to his son J., directed that in case the advancement was not paid back before his death, or at the time a division is made of the property as the will directed, it should be deducted from J.'s share, "and if he be dead, to be deducted from the share his issue would receive and the sum so deducted to be divided between my wife and children in manner as in said will directed" excluding J. or his issue. There was no devise in the will to the children other than that contained in the residuary clause. *Held*, that taking the will as a whole, the intention of the testator was to, and it did, vest the whole of his estate at his death in his children, with the substitution of their issue for those who should then be dead, but postponing the possession and enjoyment of the real estate during the life of his widow, so far and so far only as was necessary to secure for her the necessary annual income for her support, and when consistently with the trust for her benefit it was possible to give to the children immediate possession, that possession was given absolutely; that the clause providing for a sale and distribution after the death of the widow, was to be regarded as a discretion and authority for the convenience of division and solely for that purpose.

The fiction of equitable conversion is adopted only when it is a needed element to determine ownership, and will not be resorted to where the same right devolves upon the same persons, whether the property be treated as money or land, and where no rights of third persons are affected.

Reported below, 60 Hun, 417.

(Argued February 9, 1892; decided March 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 3, 1891, which reversed a decree of the surrogate of the county of Kings which overruled certain objections to the account of the executors of Henry Tienken, deceased.

The testator, Henry Tienken, died leaving a will and codicil thereto, and survived by a widow and four children. Subsequently Henry M. Tienken, one of said children, died, leaving a widow and no issue. By his will and codicil thereto he devised and bequeathed his interest in his father's estate to said widow. Upon accounting of the executors of Henry Tienken objections thereto were filed by the widow of said Henry M. Tienken, which were overruled on the ground that she had no interest therein.

The portions of the will of Henry Tienken, so far as material, are as follows:

"*Third.* I give, devise and bequeath unto my beloved wife, Anna, all that certain tract, piece or parcel of land, situate, lying and being in the town of Flatbush, county of Kings, and state of New York, known as my residence and homestead, with all the buildings, improvements and appurtenances thereon or thereto belonging, and to have and to hold the same unto her for and during the period of her natural life. I further give and bequeath unto my said wife all the furniture, household goods, and other articles upon said premises and in said residence, including horse, wagons, and harness, to have and to hold the same to her, her executors, administrators and assigns forever.

"*Fourth.* I give, devise and bequeath unto my qualifying executors hereinafter named, or to the survivors of them, all the rest, residue and remainder of my real estate, wheresoever situated, in trust, during the life of my wife, for the following uses and purposes: To collect the rents, issues and profits arising out of said property, and pay therefrom the sum of two thousand dollars once a year to my wife in quarterly payments of five hundred dollars, and out of the rents after the payment of the provision to my wife, as aforesaid, to pay all the taxes, water-rates and assessments levied upon all or any portion of my real estate, including property in Flatbush, devised to my wife for life, and pay also therefrom in repairing and keeping all of my real estate or portion of it in a tenantable condition, and apply the balance or remainder once

a year between my children, share and share alike, for their use, benefit and maintenance.

"*Fifth.* For purposes the same as in foregoing trust mentioned, and that the same continue in fulfillment thereof, without being in contravention of the same, I authorize and empower my qualifying executors hereinafter named, or the survivor of them, to sell and convey, at any time during the life of my wife, at private or public sale, all or any portion of my vacant and unimproved real estate situated in St. John's place, between Fifth and Sixth avenue, in the city of Brooklyn, in fee simple, absolute by deed under seal, when in their judgment they shall deem it beneficial and advantageous to the interest of my estate, and after paying from the proceeds the expenses of said sale and all liens and other incumbrances upon the property sold, the executors are to keep and hold the one-third of the proceeds of said sale, in trust for my said wife, during her life,    *    *    *    and to pay over to her once a year the interest or other income arising out of such investment, and pay the balance or remainder of the proceeds arising out of a sale as aforesaid equally between my children, share and share alike.

"*Sixth.* I further empower my qualifying executors, or the survivors of them, in the event that it may be necessary, to take the property located on the north-west corner of Myrtle avenue and Bridge street, in the city of Brooklyn, for the purpose of opening an avenue or street, to sell and convey the same during the life of my wife, at private or public sale, in fee simple absolute, by deed under seal, at such a price and upon such terms as shall be most beneficial and advantageous to the interest of my estate, and keep and hold the one-third of the proceeds thereof in trust for my wife during her life, in the same manner and for the same purposes as in foregoing trust mentioned, and pay over to her the interest or income thereof as therein directed, and pay the balance or remainder of the proceeds arising out of a sale as aforesaid equally between my children, share and share alike.

"*Eighth.* Whereas, in this will is mentioned and described

gifts, devises and bequests to my children, if any of them should be dead, leaving.issue surviving them, I do direct that the issue of any of my children deceased shall take the same share their parent would have received had such parent remained living, and to be divided among them, the said issue, equally, share and share alike.

"*Tenth.* After the death of my wife, I empower and direct the surviving executors to sell all of my real estate remaining unsold at public or private sale in fee simple absolute by deed under seal, at the best possible price, and divide the proceeds equally between my children, share and share alike.

"*Eleventh.* I give and bequeath all the rest, residue and remainder of my personal property in manner following, the one-third thereof to my wife, and the remainder to my children, to be divided equally between them, share and share alike."

The only material clause of the codicil is set forth in the opinion.

*Treadwell Cleveland* for appellants. The court must construe, not make anew, this will (of which the codicil constitutes an integral part). (*Phillips* v. *Davies*, 92 N. Y. 199 ; *Hard* v. *Ashley*, 117 id. 606.) The whole of the legal and equitable title to the testator's real estate (except the homestead, devised to his wife for life) vested in the executors at once upon his death, but in trust for the purposes declared in the will, and under the devise to the executors in trust, of "all the rest, residue and remainder of my real estate," the title to the homestead property vested in them, subject only to the outstanding life estate in his wife. (*Savage* v. *Burnham*, 17 N. Y. 561.) The executors and trustees are to convert the entire realty into personalty, and pay over the legacies in the proceeds mentioned in that clause. The testator's real estate ceased to be such immediately upon the death of his wife, and no interest therein, by way of remainder or otherwise, was devised subsequent to the termination of the trust estate by her death. The proceeds, the subject-matter of these legacies, did

not exist until that time. The fourth and tenth clauses clearly create a trust and not merely a power in trust, the trustees to sell and pay legacies, under the terms of section 55 of the Statute of Trusts. (*Savage* v. *Burnham*, 17 N. Y. 561; *Underwood* v. *Curtis*, 127 id. 523; *Teed* v. *Morton*, 60 id. 502; *Delaney* v. *McCormack*, 88 id. 174; *Vincent* v. *Newhouse*, 83 id. 511; *Parker* v. *Linden*, 113 id. 28; *Prentice* v. *Jansen*, 79 id. 479.) The children of the testator, therefore, at the time of his death, took no vested interest in either the real estate or its proceeds. The gift to them was wholly future and contingent, and only those children, or the issue of deceased children living at the time of the gift, can take under terms of the will. The proceeds of the real estate, the subject-matter of the gift, did not exist until after the death of the wife. Even the provisions of the fifth and sixth clauses leave everything to the absolute discretion of the trustees, so that any possible benefit to be derived under those clauses was, at the testator's death, utterly uncertain and contingent. (*Warner* v. *Durant*, 76 N. Y. 133; *Vincent* v. *Newhouse*, 83 id. 511; *U. S. T. Co.* v. *Roche*, 116 id. 120; *Townsend* v. *Frommer*, 125 id. 446; *Colton* v. *Fox*, 67 id. 348; *Everitt* v. *Everitt*, 29 id. 76; *Delafield* v. *Shipman*, 103 id. 467; *Tweed* v. *Morton*, 60 id. 502; *Goebel* v. *Wolf*, 113 id. 405.) But even if there were no conversion in this case of the realty into personalty at the death of the wife, still the existence of the trust estate and the very nature of the gift itself, in view of the language of the tenth clause, render that gift future and contingent. (*Delafield* v. *Shipman*, 103 N. Y. 468; *Colton* v. *Fox*, 67 id. 348; *U. S. T. Co.* v. *Roche*, 116 id. 120; *Hobson* v. *Hale*, 95 id. 588.) It is not true, as the respondent contends, that this contention of the appellants as to the contingent and future character of the gift to the children in the tenth clause necessarily results in cutting off the issue of all children of the testator who have died after his death and prior to the death of his wife. The eighth clause of the will clearly provides, at any rate in the light of the codicil, for a substitution of issue in the place of deceased children, whether

such children died before or after the testator. (*Hobson* v.
*Hale*, 95 N. Y. 588; *Vanderzee* v. *Slingerland*, 103 id. 47;
*In re Wills*, 113 N. Y. 400.)

*George F. Martens* for appellant John H. Tienken. The
remainder in the Flatbush property was covered by the gift of
the residuary. It is a familiar rule that "the law prefers a
construction of a will which will prevent a partial intestacy to
one which will permit it." (*Vernon* v. *Vernon*, 53 N. Y. 351–
361; *Thomas* v. *Snyder*, 43 Hun, 14, 15; *Bates* v. *Hillman*,
43 Barb. 645, 647; *Floyd* v. *Carow*, 88 N. Y. 560; *Riker*
v. *Cornwall*, 113 id. 115.) The tenth clause of said will shows
that upon the death of the widow there was to be a conversion
of the realty into personal property, and that it was this per-
sonal property which was to be divided. The direction to
convert on the death of the widow was imperative, and prior
to then the executors had no power to sell except as mentioned
in clauses of will designated "Fifth" and "Sixth." (*Teed* v.
*Morton*, 60 N. Y. 502; *Warner* v. *Durant*, 76 id. 133; *Ship-
man* v. *Rollins*, 98 id. 311; *Delafield* v. *Shipman*, 103 id.
464; *Vincent* v. *Newhouse*, 83 id. 505; *Delaney* v. *McCor-
mack*, 88 id. 183; *Palmer* v. *Horn*, 84 id. 516.) In the will
of Henry Tienken there has been no gift of the residuary
real estate in any other shape than as money. (*Wager* v.
*Wager*, 96 N. Y. 164; *Dubois* v. *Ray*, 35 id. 167; *Post* v.
*Hover*, 33 id. 593; *Roome* v. *Phillips*, 24 id. 468; *Drake* v.
*Bergh*, 10 Paige, 140; *Mason* v. *Jones*, 2 Barb. 229; *Phil-
lips* v. *Davis*, 92 N. Y. 204; *Pierrepont* v. *Edwards*, 25 N.
Y. 131; *Delany* v. *Van Aulen*, 84 id. 22; *In re Paton*, 111
id. 480.)

*Theodore N. Melvin* for respondent. The law favors imme-
diate vesting. (*Moore* v. *Lyons*, 25 Wend. 126, 144; *Manice*
v. *Manice*, 43 N. Y. 368; *Henderson* v. *Henderson*, 113 id.
16.) The intention of the testator, as gathered from the whole
will, is the guide to an exposition of its meaning. (2 R. S.
chap. 1, § 2; 2 Story's Eq. Juris. § 792; *Craig* v. *Leslie*, 3

Wheat. 578; *Byrnes* v. *Stilwell*, 103 N. Y. 458.) A mere general rule of interpretation must always yield, or be modified, and its operation will be mitigated and even annulled, if it is apparent that the application of it would produce a result not contemplated. (*Madell* v. *Winter*, 3 Ves. 543; *Moore* v. *Lyons*, 25 Wend. 124; *Lovett* v. *Gillender*, 35 N. Y. 621; *Goebel* v. *Wolf*, 113 id. 412; *Rich* v. *Hawxhurst*, 114 id. 515.) The objection that testator did not specifically provide for a devolution of the realty, as realty, after the termination of the trust term, but in the tenth clause limited succession to the children who survive the trust only, is untenable. There are no words which declare this limitation, but its restrictive operation invoked here, rests solely upon an erroneous rule of interpretation. This interpretation is: that this direction in said tenth clause, to the executors to sell and divide at the death of the widow, constituted an equitable conversion of the realty into personalty, and postponed the vesting of the gift until the termination of the trust term, and limited participation in the proceeds of sale to only such children of testator as survived the trust term. In other words, that the gift is a bequest of personalty to the children of testator who survive his widow. (*Livingston* v. *Greene*, 52 N. Y. 117, 124; *Weed* v. *Aldrich*, 5 T. & C. 105; *Bushnell* v. *Carpenter*, 92 N. Y. 270; *DeKay* v. *Irving*, 5 Den. 649; *Manice* v. *Manice*, 43 N. Y. 364, 368, 372; *Henderson* v. *Henderson*, 113 id. 12, 14; *Townshend* v. *Frommer*, 125 id. 458; *Mowatt* v. *Carow*, 7 Paige, 332, 339; *In re Hollett*, 8 id. 375; *Marsh* v. *Hague*, 1 Edw. Ch. 164; *Heard* v. *Horton*, 1 Den. 165; *Chrystie* v. *Phyfe*, 19 N. Y. 344; *Guernsey* v. *Guernsey*, 36 id. 271; *Magaw* v. *Field*, 48 id. 668; *Palmer* v. *Horn*, 84 id. 516; *In re Robinson*, 57 Hun, 395; *Kirk* v. *Cushman*, 3 Dem. 241; *Taft* v. *Taft*, Id. 86; *Patchen* v. *Patchen*, 121 N. Y. 434; *Rose* v. *Clark*, 8 Paige, 574; 2 Williams on Exrs. [6th Am. ed.] 1591; *Marsh* v. *Wheeler*, 3 Edw. Ch. 160; *Byrnes* v. *Stillwell*, 103 N. Y. 460, 462; *Moore* v. *Lyons*, 25 Wend. 119, 141; *Thomas* v. *Snyder*, 43 N. Y. 14; *Vernon* v. *Vernon*, 53 id. 351; *Bates* v. *Hillman*,

43 Barb. 645; *Lyman* v. *Lyman*, 22 Hun, 261; *Vanderpoel* v. *Lowe*, 112 N. Y. 177; 2 Jarman on Wills [5th Am. ed.], 458, 469, 702; 1 id. 286, 287; *Traver* v. *Schell*, 20 N. Y. 92; *Hopkins* v. *Hopkins*, 1 Hun, 355; *Kelly* v. *Kelly*, 67 N. Y. 50; *In re Meyer*, 57 How. Pr. 207; *Embury* v. *Sheldon*, 68 N. Y. 233; *Converse* v. *Kellogg*, 7 Barb. 590; *Stevenson* v. *Lesley*, 70 N. Y. 515; *Quackenbos* v. *Slingerland*, 102 id. 128; *Vanderzee* v. *Slingerland*, 103 id. 47; *In re Wells*, 113 id. 403; *In re N. Y. L. & W. Co.*, 105 id. 89; *Peters* v. *Beverly*, 10 Pet. 533; *White* v. *Howard*, 46 N. Y. 162; *Brearley* v. *Brearley*, 1 Stock. 21; *Fraser* v. *McNaughton*, 58 Hun, 30; *Hobson* v. *Hale*, 95 N. Y. 598; *Clift* v. *Moses*, 116 id. 144, 157; *Bunce* v. *Vandegrift*, 8 Paige, 37; *Savage* v. *Burnham*, 17 N. Y. 569; *Moncrief* v. *Ross*, 50 id. 436; *Ross* v. *Roberts*, 63 id. 652; 2 Hun, 90; *James* v. *Hawley*, 5 Paige, 317; *Stagg* v. *Jackson*, 1 N. Y. 206; *Harris* v. *Clark*, 7 id. 242; *In re Fox*, 52 id. 537; *Gourley* v. *Campbell*, 66 id. 174; *Downing* v. *Marshall*, 23 id. 379; *Crittenden* v. *Fairchild*, 41 id. 291; *Hetzel* v. *Barber*, 60 id. 1; *Prentice* v. *Jansen*, 79 id. 479; *Cook* v. *Platt*, 98 id. 35; *Chamberlain* v. *Taylor*, 105 id. 191, 194; *Parker* v. *Linden*, 113 id. 38; *Watkins* v. *Reynolds*, 123 id. 216; *In re Bingham*, 127 id. 314; *Roseboom* v. *Roseboom*, 81 id. 356; *Clark* v. *Leupp*, 88 id. 228; *Campbell* v. *Beaumont*, 91 id. 464; *Clark* v. *Lynch*, 46 Barb. 81; *Tucker* v. *Bishop*, 16 N. Y. 402; *Campbell* v. *Rawdon*, 18 id. 415; *Ferrer* v. *Pyne*, 81 id. 285; *Goebel* v. *Wolf*, 113 id. 405.) If the tenth clause does not in effect limit the remainder to the children who survive the trust term only, but they took such remainder as realty at testator's death then Henry M. Tienken had an estate in expectancy for "the right to the possession is postponed to a future period." (*Manice* v. *Manice*, 43 N. Y. 367; *Haxton* v. *Corse*, 2 Barb. Ch. 518.) The portion of the income to which Henry M. Tienken would have been entitled, had he survived, follows, and is an adjunct of, the estate which he took, and his devisee is entitled to it. (*Haxtun* v. *Corse*, 2 Barb. Ch. 518; *Kilpatrick* v. *Judson*, 15 N. Y. 326; *Gilman* v. *Redington*, 24

id. 9 ; *Manice* v. *Manice*, 43 id. 373 ; *Robinson* v. *Robinson*, 5 Lans. 165 ; *Embury* v. *Sheldon*, 68 N. Y. 238 ; *Goebel* v. *Wolf*, 113 id. 416 ; *Delafield* v. *Shipman*, 103 id. 463 ; 1 R. S. 726, § 40 ; 2 id. 773, § 2 ; 3 id. 2256.) The Surrogate's Court had jurisdiction to determine the questions here. Participation in the income involves ownership of the estate. There can be no right to income unless there is right to corpus. In such a case ownership of corpus is necessarily and properly determined in the Surrogate's Court. (Code Civ. Pro. §§ 2472, 2481, 2726 ; *In re Marcials*, 15 N. Y. 93 ; *Riggs* v. *Cragg*, 89 id. 492 ; *In re Verplanck*, 91 id. 450 ; *Purdy* v. *Hayt*, 92 id. 450 ; *In re Stiles*, 3 id. 138.)

FINCH, J. The fundamental question upon which the construction of this will turns is whether an estate in remainder vested in the children of the testator at his death, or in such of them as should survive the death of the widow and consequent termination of the trust. The general scheme of the will contemplated two essential results; a provision for the widow during her life through the operation of a trust securing income for her support, and, subject to that, a gift of all the property to the testator's children ; but the details of that general plan have been formulated in the terms of the will with such a degree of ambiguity and uncertainty as to have evoked a difference of opinion in the courts below, and to justify a careful consideration of the question presented.

The trust for the benefit of the wife was created by the fourth clause of the will. By the third clause the testator had given his homestead in Flatbush to his wife for life, together with the furniture and household appurtenances, absolutely and forever. His will then gives, devises, and bequeaths to his executors all the rest, residue and remainder of his real estate in trust during the life of his wife for certain stated uses and purposes. These were to pay to his wife two thousand dollars each year in quarterly payments of five hundred dollars, and out of the income remaining to pay all taxes, water-rates and assessments and all necessary repairs, and, in the final words

of the clause, " apply the balance or remainder once a year, between my children, share and share alike, for their use, benefit and maintenance." The controversy between these parties begins with this clause. The appellants contend that it vested the whole and entire estate, except the life estate of the widow in the homestead, in the executors as trustees ; that there was no estate in remainder created by the will, or which could descend without it ; and that there were and could be no ultimate rights in the children except by and through the trust. So far as this clause is concerned, considered by itself and without reference to the later provisions, which are claimed to explain or qualify it, there would seem to be no ground for enlarging the legal estate of the trustees beyond one for the life of the widow. It is devised with that precise and definite limitation in the terms of its creation, and no purpose of the trust, as thus far indicated, requires in the trustees a legal estate beyond, or superior to, one for the life of the widow alone. The rule is settled in this state that the trustee takes a legal estate commensurate with the equitable estate, and that outside of that there may be remainders and future estates, or powers of sale adequate to terminate the trust. (*Crooke* v. *County of Kings*, 97 N. Y. 421.) In the present case, under and by force of the fourth clause, the equitable estate bounded by the life of the wife dictated a legal estate in the executors having the same limitation, and the terms of the devise, as expressed in the will, correspond with the necessary legal result. There was, therefore, outside of the trust, a remainder in fee which went somewhere, and which either descended to the heirs at law upon the death of the testator, or was devised by the further terms and provisions of the will ; and we cannot, under the fourth clause at least, get rid of the inquiry, upon the appellant's theory, that the entire legal estate vested in the executors and no remainder existed. It is further to be observed that in this clause the phrase " my children " plainly refers to the testator's four living children, who were then in his mind, and who were to share equally in the balance of income when his will should take effect.

The fifth and sixth clauses which follow serve to modify the trust in the discretion of the trustees, as it respects two specific parcels of the real estate. The executors were entrusted with a power of sale, which they were at liberty to exercise during the life of the widow and before the original period fixed for the termination of the trust. But upon such sale one-third of the net proceeds realized was to remain as a trust fund in the hands of the executors for the benefit of the wife, and the remaining two-thirds was to be divided, as the words are, "equally among my children, share and share alike." This power of sale in no manner enlarged or changed the quality of the estate vested in the trustees by the fourth clause. It was a power in trust which, in and of itself, and although perhaps connected with a right to receive the rents and profits, did not vest title in the trustees. (*Cooke* v. *Platt*, 98 N. Y. 35; *Chamberlain* v. *Taylor*, 105 id. 192.) Of course it could add nothing to the scope and extent of the legal title vested in the executors for the life of the wife. Two things about this discretionary power, however, are worthy of consideration. It is again "my children" to whom the testator refers as distributees, and the expression does not mean and cannot mean such of them only as should be living at the death of his wife, for the precise purpose of the authority conferred was a possible distribution earlier than that event. The second thing demanding our attention and to rest in our memory is that, outside of the trust provision for the widow, the balance of proceeds of the sales goes at once and absolutely to the use and benefit of the children.

The eighth clause of the will has been quite prominent in the controversy, and two very different interpretations have been given to it, either of which its language will possibly bear. It reads thus: "Whereas, in this will is mentioned and described gifts, devises and bequests to my children, if any of them should be dead leaving issue surviving them, I do direct that the issue of any of my children deceased shall take the same share their parent would have received had such parent remained living, and to be divided among them, the said issue,

share and share alike." I think its true meaning and office was to put in the place and stead of a child who should die before the testator, but leave issue surviving, such surviving issue as recipients of the parent's share, standing collectively in his or her place as one of the children to whom property is given. The general rule is that the death referred to, in the absence of any other named period, is one in the testator's life-time (*Vanderzee* v. *Slingerland,* 103 N. Y. 53); and while the provision made was probably needless, in view of the protection afforded by the statute (2 R. S. 66, § 52; *Matter of Wells,* 113 N. Y. 400), that fact will not alter the construction, unless some other, making the clause necessary and effective, should be found to be both a possible one and within the testamentary intention. I am inclined to think, therefore, that the eighth clause of the will, instead of dictating our conclusion, must itself receive interpretation from our final view of the testator's intention. It is, however an argument of some force that the clause itself was needless, except upon a construction which postponed the vesting until the death of the widow. Granting its force in that respect, we shall see, I think, that it is more than balanced by other inferences founded upon the language of the same clause, and to which I shall later recur.

We come now to the tenth clause, which is the one mainly relied on by the appellants, and which reads thus: "After the death of my wife, I empower and direct the surviving executors to sell all of my real estate remaining unsold at public or private sale, in fee simple absolute by deed under seal, at the best possible price, and divide the proceeds equally among my children, share and share alike." The argument founded upon this provision is that there was an equitable conversion of the land into money at the date of the widow's death, and a gift over at that date of personal property merely; that the legacy given was not to come into existence until the prescribed event; and that the rule applicable is that where there is no gift except in the direction to divide at a future period, time enters into the substance of the gift, and the vesting rather than the enjoyment is postponed.

It is certain that there was no equitable conversion out and out and operating from the death of the testator, and none can be implied at an earlier date than the death of the widow, for none was directed prior to that event. The land, therefore, remained real estate at the death of the testator, unconverted in fact or in equity, so that the remainder in fee descended or passed by the will, and must be accounted for. We have already seen that it did not go to the executors whose legal estate was solely for the life of the widow, and was not at all enlarged by powers of sale which themselves conferred no title; and it seems imperative to say that the remainder passed by descent or devise to the four children who survived the testator, and were identical as heirs or devisees. In either case it passed subject to the trust and the powers of sale, and the appellants' position must necessarily be that the legal title to one-fourth of the estate which vested in the son Henry M. was defeasible and contingent, and subject to be defeated by his death in the life-time of the widow without issue, through the exercise of the power of sale imperatively commanded and the inevitable division of the proceeds among the children surviving the widow. The question thus becomes simply whether the power of sale and distribution of proceeds was a postponement of the time of enjoyment of an estate already vested and merely a plan or mode of division of such estate among those fully entitled, or a scheme to divest the estate of one or more dying without issue before the widow in favor of those who should survive that event. And thus, while disagreeing with the appellants as to the scope of the legal estate vested in the trustees and pursuing a somewhat different route, we are confronted with the same substantial question, which has been the pivotal point of the argument, in the form of an inquiry whether Henry M. took an absolute remainder in fee, or one contingent upon his survival of the widow and which by his earlier death was defeated so that nothing beneficial could pass to his widow by his will.

One other provision of the will and one contained in a later codicil should first be brought into view as bearing upon a cor-

rect conclusion.    By the eleventh clause of the will the whole residue and remainder of the testator's personal estate was given one-third to the widow and two-thirds to the four children absolutely at his death vesting in them at that date, the designation used being still the one uniform and familiar phrase, "my children."

The material portion of the codicil reads thus: "Whereas, I have advanced to my son, John H. Tienken, for business purposes since the making of my aforesaid last will and testament, the sum of fifteen thousand dollars which he promises and agrees to refund with interest at five per cent per annum. Now, in the event that he fails to pay the same, I order and direct that the amount of said sum with interest thereon which is not paid at the time of my death, or at the time a division is made of my property as my will directs, shall be deducted from his share and benefit in my property as in my said will mentioned, and if he be dead, to be deducted from the share his issue would receive and the sum so deducted to be divided between my wife and children in manner as in said will mentioned, but excluding my son John or his issue from sharing in the sum so deducted."

Now, taking this will as a whole, in all its parts, and in view of its clear and obvious purposes, we deem it impossible to resist the conviction, which even impressed itself partially upon the surrogate and controlled the conclusion of the General Term, that the testator's intention and design, which he supposed himself to have accomplished, was to vest the whole of his estate in the four children living at his death, with a substitution of their issue for those who should then be dead, but postponing the possession and enjoyment of the real estate during the life of his wife so far and so far only as to secure for her the necessary annual income for her support.    Whenever and wherever, consistently with the trust for her benefit, it was possible to give to the children an immediate possession without deferring it in the least degree, that possession is given at once and absolutely.    In the fourth clause the entire balance of income, after the annuity to the wife and the current expenses

of the real estate, is given to the children absolutely and without contingency or delay. Under the discretionary powers of sale one-third is invested to produce a trust income for the widow, but the remaining two-thirds escapes from the trust and goes to the children. Two-thirds of the whole residue of the personal estate is given to them immediately and without postponement because that provision in no manner harms or affects the trust for the wife, and when that trust ends, everything in equal proportion is to be divided among the children.

In the eighth clause the testator declares that there are in his will "devises" to his children. There are none upon the appellants' construction; only legacies, and those deferred. The word is used early in the will, before the final dispositions, but when those were in his mind and evidently contemplated. The word was not used negligently or carelessly, for the phrasing of the will indicates legal intelligence and fitness in technical expressions; and we are, therefore, bound to infer that in the thought of the testator there was a devise to his children which could only have been of the real estate subject to the trust.

It is significant also that the distribution in the tenth clause is in terms "among my children" share and share alike. It is not among my surviving children, among those who shall then be living, or among those and the issue of such as shall have previously died, but among "my children;" an expression already many times previously used and invariably in one definite sense, as meaning the four children living at his death, or represented by their issue if earlier deceased. The provision too is one merely for division and intended not so much to create a right as to sever an existing one. It is quite difficult to conceive that the testator used the words "my children" in an ambulatory, changing or ambiguous manner; that in his thought it meant or might mean four of them at his death, three of them upon a sale under the fifth clause, two of them at a sale under the sixth clause, and one or none at the end of the trust if such deaths should occur along the line; and that without any specific words of survival or any

appropriate provision for the emergencies. It is more reasonable to say that the phrase used in one sense at the beginning and at the end of the will was used in the same sense in the clause of distribution.

In the eighth clause and in the codicil the testator refers to the share of a child, the share such child would have had if death had not intervened, and as belonging to or devolving upon the son or daughter at the moment when the will should take effect. The manner of its use indicates that it referred to a child's share in the whole estate rather than in some undefined part of it; and when direction is given that John's debt, if not paid at testator's death shall stand deducted from his share unless paid before the final distribution, and giving the wife a part of the deduction, there is contemplated as existing in John a share in the whole estate, his share, while the wife is living and before the ultimate distribution. If the testator had meant merely John's share in the personal estate he would have said so, since that might have been and possibly was insufficient to cover the debt.

In this connection, recurring as was promised to the phrasing of the eighth clause, it is worthy of notice that upon either of the suggested constructions it contemplates a share in the whole estate belonging to a child at the death of the testator and vesting in him at that date. Upon the construction which we have adopted of a death in the testator's life-time, it substitutes for the share which a child would have had at that date the same share vesting in his or her issue, and omits any provision for issue upon the parent's later death, because such issue would take it by inheritance at least. Upon the appellants' construction that the death referred to means a death before or after that of the testator and at any time preceding the death of the widow, it necessarily contemplates a share existing in each child at every moment of the prescribed period, and so as well at the death of the testator as at any succeeding day prior to the decease of the widow.

In the respects discussed the will very much resembles that upon which we passed in *Goebel* v. *Wolf* (113 N. Y. 405),

There, as here, there was no direct gift of the residue to the children living at testator's death; there, as here, there was a trust for the support of the widow, followed by a direction to divide among the children; there, as here, the uniform words of designation were "my children," without words of survivorship or terms indicating selection among them; there, as here, there was a gift of personalty outright and advances made chargeable as against the share of a child. We held in that case that the estate, subject to the trust, vested in the children at the death of the testator, drawing that conclusion from the collective provisions of the will. I think the inference is quite as strong in the present case. The provisions of the will indicate a purpose to follow the legal rules of descent and distribution, modified only by the trust for the support of the widow. Of the proceeds of the discretionary sales one-third is held for the widow and two-thirds go to the children; the personalty is given in the same proportions; the trust estate is in lieu of dower, and at its close the proceeds go to the children.

The clause of sale and distribution must, therefore, be regarded as a direction and authority given for the convenience of division, and solely for that purpose. Having no other, it may become unnecessary and the devisees hold and retain the land in its real and actual character. The fiction of an equitable conversion is adopted only where it is a needed element to determine ownership. Equity will not resort to the fiction where the same right devolves upon the same persons whether the property be treated as money or land, and where no rights of third persons depend upon the conversion. When we have determined from a view of the whole will that the four children of the testator living at his death took vested interests in the property, subject only to the prior life estates of the widow and the executors, and subject also to the exercise of the powers of sale, we have rendered the question of an equitable conversion quite immaterial. If the gift was a bequest, it vested in the children living at the testator's death, because the fund given was certain to be created, resting upon nc

doubtful contingency, dependent upon no possible discretion, and sure to exist and devolve in enjoyment at the appointed time.

We have heretofore said that the rule of construction founded upon a gift flowing only from a direction to divide has many exceptions, and is to be used as an aid to ascertain the intention and not as a force to pervert it. I have observed in general that where it has prevailed it has been where no contrary intention was fairly indicated, and where its own force was somewhat strengthened and its indication corroborated by further facts. We feel quite satisfied in the present case that the trust postponed only the period of enjoyment and the sale was intended to conveniently sever the interests of those already entitled.

The judgment of the General Term should be affirmed, with costs.

All concur.

Judgment affirmed.