In the Matter of the Judicial Settlement of the Account of VIRGIL C. TRAVER, as Sole Surviving Executor of the Last Will and Testament of JOHN W. MOORE, Deceased.

CHARLES G. COFFIN, as Special Guardian of NELLIE K. MOORE, and ADDIE COFFIN, as Administratix, etc., of SYLVESTER P. MOORE, Deceased, and as General Guardian of NELLIE K. MOORE, Appellants; VIRGIL C. TRAVER, as Executor, etc., of JOHN W. MOORE, Deceased, and A. LEE WAGER, as Special Guardian of CARRIE L. MOORE, an Infant, and Others, Respondents.

*Will — a direction to executors to pay at a future time creates a contingent gift.*

A testator gave to his wife the rents, income and profits of his real and personal estate during her life, and, if they should prove insufficient for her proper support, so much of the *corpus* of the estate as should be necessary for that purpose; and after the death of his wife he directed in that contingency as follows: "My said executors shall pay what shall remain of my said personal and real estate, or the proceeds thereof, to my son Sylvester P. Moore, for him to have and hold the same forever. In case of the death of my said son Sylvester P. before the death of my said wife, without lawful issue, then what shall remain of my said estate. after the death of my said wife, shall be divided equally among my brothers and sisters."

The will further provided that, in case Sylvester P. Moore survived the widow, he should make certain payments to an infant daughter of a deceased son of the testator.

Sylvester P. Moore died in June, 1881, leaving a widow and a child, his only heir at law and next of kin, and the widow of the testator died in October, 1897.

*Held,* that the gift to Sylvester P. Moore was contingent on his surviving the testator's widow;

That this construction was favored by the provision in favor of the infant grandchild of the testator, who, if the gift to Sylvester P. Moore were not held to be contingent, would receive nothing, although should Sylvester P. Moore survive the widow, such grandchild would be entitled to the sum given to her in that contingency, it not being intelligible why the death of the son during the lifetime of the widow should give this grandchild any less claim on her grandfather's bounty than she would have if the son had survived the widow.

APPEAL by Charles G. Coffin, as special guardian of Nellie K. Moore, and another. from so much of a decree of the Surrogate's Court of the county of Dutchess, entered in said Surrogate's Court on the 21st day of December, 1897, as directs said executor, after the payment by him of his commissions, taxes and costs of the

accounting and allowances therefor, " that of the sum then remaining in his hands he pay one-half thereof to the general guardian of Nellie K. Moore, for and on behalf of the said Nellie K. Moore, and that he pay the other half thereof to the general guardian of Carrie. L. Moore, for and on behalf of the said Carrie L. Moore, and that on making said payments he be and hereby is discharged from all further liability to the estate of said deceased."

*Clarence E. Bloodgood*, for the appellants.

*Henry M. Taylor*, for the respondent A. Lee Wager as special guardian of Carrie L. Moore.

CULLEN, J.:

The question in this case is as to the proper construction of the will of John W. Moore. The following are the material provisions of the will:

"*Second.* I give and bequeath unto my wife, Juliette M., all the rents, income and profits of all my real and personal estate (after payment of my just debts) for and during her natural life, and in case it shall be deemed advisable by my executors to sell all, or any portion of my real estate, during her lifetime, they have full power and authority to do so, and to give good and sufficient deed or deeds therefor, and the proceeds of such sale to be invested in some prudent and safe manner, and the interest thereof paid to her during her natural life. If, for any unforeseen circumstances, the said rents and income of my said estate shall not be sufficient for the reasonable and proper support and maintenance of my said wife, then, and in that case, my executors are empowered and directed to apply so much of said estate, or the proceeds thereof, as shall be ample and sufficient for such purpose, support and maintenance.

"*Third.* After the death of my said wife, then my said executors shall pay what shall remain of my said personal and real estate, or the proceeds thereof, to my son Sylvester P. Moore, for him to have and hold the same forever. In case of the death of my said son Sylvester P. before the death of my said wife, without lawful issue, then what shall remain of my said estate, after the death of my said wife, shall be divided equally among my brothers and sisters, for them to have and hold the same forever.

" *Fourth.* In case my said son Sylvester P. shall survive my said wife, and the proceeds, or what shall remain of my said estate, at the death of my said wife, shall exceed the sum of five thousand dollars, then, and in that case, my said son shall pay unto Carrie L., the infant daughter of my deceased son William L. Moore, the sum of one thousand dollars; but in case there shall not remain of said estate a sum of three thousand dollars, and not exceeding five thousand dollars, then my said son shall pay unto said Carrie L. only the sum of five hundred dollars; and if said remainder shall be less than three thousand dollars, then my said son is to pay nothing to said Carrie L. This payment to Carrie L. is a condition to his receiving the bequest herein made to him."

Sylvester P. Moore died June 23, 1881, leaving a widow, Addie Moore, and a child, Nellie, his only heir at law and next of kin. Juliette M. Moore, the widow of the testator, died October 22, 1897. The real estate of the testator was converted into moneys by the executors under the authority given them by his will, and the present controversy is as to the distribution of that fund. The widow of Sylvester contends that the gift to her intestate was vested and passes to her. The respondent Carrie L. Moore insists that the gift to Sylvester was contingent on his surviving the testator's widow, and that the fund is to be distributed as in case of intestacy. The learned surrogate adopted the latter view.

As is frequently the case in controversies as to the construction of wills, a contingency has occurred that the testator has not provided for, at least in express terms. We have, therefore, to construe the will under the authorities and rules which ascribe certain meanings to particular phrases, in the absence of anything in the context of the will showing that the testator intended a different disposition of his estate. As was said by Judge EARL, though it is highly improbable that the testator knew of those technical rules of construction, still we must ascribe to him that knowledge.

In the will before us, the only gift to Sylvester P. Moore is the direction in the 3d clause that, after the death of the widow, the executor shall pay to him what may remain of the personal and real estate, or the proceeds thereof. The general rule of construction is, that " where there is no gift but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting in

the beneficiary will not take place until that time arrives." (*Warner* v. *Durant*, 76 N. Y. 133; *Smith* v. *Edwards*, 88 id. 92; *Shipman* v. *Rollins*, 98 id. 311; *Delafield* v. *Shipman*, 103 id. 463; *Matter of Baer*, 147 id. 348.) This rule is subject to many exceptions. (*Goebel* v. *Wolf*, 113 N. Y. 405; *Matter of Tienken*, 131 id. 391; *Matter of Young*, 145 id. 535.) " The rule referred to is not inflexible or arbitrary, and is to be applied in subordination to the testamentary intention, and not as destructive of it." (FINCH, J., *Matter of Young, supra.*) In *Goebel* v. *Wolf* the gift was held vested, because " This construction also prevents the disinheritance of issue of any child who may marry and die before the expiration of the trust period." In *Shangle* v. *Hallock* (6 App. Div. 55) this court held that under the provisions of the will then before us the gift was vested, though it proceeded solely from a direction for future division.

The question, therefore, is, whether this case falls within the rule or within the exceptions. In support of the latter view is urged the claim that the opposite construction disinherits the issue of the first object of the gift. This, however, is only partially true, as in case of intestacy of the testator the widow and next of kin of Sylvester P. Moore would receive one-half of the estate. It is also urged that the gift over in case of the death of Sylvester without issue, tends to vest a devise which, standing alone, would be contingent (1 Jarman Wills, 810), and that a construction that prevents intestacy should be preferred to one that creates intestacy. Both these claims have force. But, on the other hand, the construction contended for would be inconsistent with the provision of the 4th clause of the will. The direction in that clause, that certain payments shall be made to the testator's grandchild by another son, is made dependent on the son Sylvester surviving the testator's widow. As he has died first, if the appellant's contention prevails the grandchild, Carrie, will get nothing. It is difficult to imagine any motive or feeling which would have impelled the testator to give his estate absolutely to his son, subject only to the life estate of the widow, and at the same time make the payment to the grandchild, Carrie, dependent upon the son living until the time he should receive the estate in possession, the death of the widow. Why should the death of the son give the granddaughter any less claim on her grandfather's

bounty? The primary object of the testator's solicitude was his widow. He gave to her not only the whole income of his estate, but as much of the principal as might be requisite for her support. At the time of the execution of the will, the son Sylvester was unmarried and living in the testator's family. The testator may very well have regarded the claims of his own children as paramount to those of more remote descendants; and the difference between the testamentary provision for his son and that for the child of his deceased son may be readily and naturally accounted for by that feeling. But his testamentary obligation to that son he regarded as wholly subordinate to that to his widow; and I cannot see why he should have regarded the claim of the family of the son, in case of his decease before the widow, as greater than that of the son himself. That family would have no more claim on him than the granddaughter, Carrie.

I think it is thus apparent that the testator contemplated the son's receiving the gift only in case of his surviving until the time of possession. The probabilities are that the testator did not foresee the state of facts which has actually arisen. At times, in such cases, the courts are compelled, by reason of settled rules of law, to give an effect to a will that it is probable the testator would never have assented to had he foreseen the contingency. In this case the artificial rule of law will not only work equality between the parties, but will produce a result which, in all probability, would be in entire accord with the testator's wishes. I think, therefore, that the rule, not the exception, should prevail.

The decree appealed from should be affirmed, with costs.

All concurred, except HATCH, J., absent.

Decree of the surrogate affirmed, with costs to all parties payable out of the fund.