(Surrogate's Court, Rensselaer County. April, 1904.)

**1. WILLS—CONSTRUCTION—VESTING OF ESTATE. .**

A will gave the entire estate to the executor in trust for the support of the widow until her death or remarriage, upon which event certain legacies were to be paid to designated persons, if living, and, if dead, to go to the heirs of the person so dying, or to go to his heirs and assigns. It was further provided that, in case the value of the estate at testator's death should be less than a certain sum, the legacies should be reduced proportionately, and that after the death or remarriage of the widow, and payment of the legacies, one-third of the estate should go to and belong to testator's niece, her heirs and assigns, forever; that another third should go to the widow's nephew, his heirs and assigns, forever; and that the remaining third should be divided in parts, and should go to and belong to certain persons. In a codicil the testator used the words "shall belong and be payable to," and "shall belong to and be paid to," when referring to legacies passing under the will and codicil. Testator died many years after the making of the will and codicil, and before his wife, who never remarried. *Held,* that the vesting of the legacies was not postponed until the widow's death, but that they vested at testator's death.

**2. SAME—TRANSFER TAX.**

Where a vested though defeasible interest in remainder passes under a will to the remainderman on the testator's death, though the possession does not pass until the death of the life tenant, the transfer or succession is referred to the time of the death of the testator; and, if that occurred prior to the enactment of the act taxing transfers of property, the remainder is not taxable.

Judicial settlement of the estate of John Hitchins, deceased. From an order determining the estate not liable to taxation under the taxable transfer act, the Comptroller of the state of New York appeals. Affirmed.

See 80 N. Y. Supp. 1125.

Jarvis P. O'Brien and Geo. B. Wellington, for State Comptroller.
Hayner & Ward, for administrator with the will annexed.
J. W. & J. V. Coffey, for Olive V. Hitchins and others.
E. M. Davis, for Frank K. Hitchins.
E. W. Douglas, for Francis A. Douglas and others.
John E. Pound, for John T. Darrison and others.
James Farrell, special guardian, for Irene Hitchins.
James W. Coffey, special guardian, for Alonzo G. Hitchins, Jr., and another.
E. M. Davis, special guardian, for Olive Hitchins.
William J. Roche, as executor of will of Henry T. Nason, deceased.
J. Harry Tiernan, for William McKinney.

HEATON, S. Appeal by the State Comptroller from an order of this court adjudging that the estate of John Hitchins is not taxable. The testator died October 1, 1884, and his will was probated December 24, 1884, both being prior to the date of the enactment of the act un-

der which estates became taxable. The will of deceased was dated September 28, 1868, and a codicil thereto was made on the 30th day of January, 1871. The provisions of the will are substantially as follows:

First. His wife Olive is appointed sole executrix.

Second. He gives, devises, and bequeaths to his executrix all of his estate, upon the trusts and subject to the conditions in his will mentioned.

Third. The property so devised and bequeathed in trust is "to support liberally my said wife Olive during her life or so long during her life as she shall remain my widow and unmarried, and upon her death or remarriage to go to the objects of my bounty hereinafter named."

Fourth. To carry out the objects of the trust, Olive is authorized to sell and convey any or all property, make new investments, make repairs and improvements on real estate, and to do all acts in her name as such trustee and executrix as she may deem beneficial to his estate; and while she remains unmarried she is given all the income, and the right to use as much of principal for her support as she shall deem necessary to her comfort, in case she shall find the income inadequate.

Fifth. He directs his trustee to pay, under certain conditions, $200 a year for the support of his brother Stephen, and to buy a burial lot, erect a monument thereon, and provide for its perpetual care.

Sixth. After the death or remarriage of his wife, he directs that there shall be paid to four persons $600 each, "and in case of the death of either the legacy to go to the heirs of the person so dying"; to another person, $100; "this sum also in case of his death to go to his heirs and assigns." In case the whole value of his estate at the time of his death shall be less than $40,000, said legacies to be reduced proportionately.

Seventh. After the death or remarriage of his wife, "and the payment of the legacies above provided, the equal undivided one-third part of all my real and personal estate, excepting that which is herein given to my said wife absolutely, which shall not have been expended by my said wife for her support in whatever condition the same may be and however invested shall go to and belong to my beloved niece Elizabeth B. Douglas, the daughter of my brother Francis her heirs and assigns forever."

Eighth. In the same language he provides that another one-third shall go to his wife's nephew, John Hitchins Gardner, "his heirs and assigns forever."

Ninth. The remaining one-third he divides into five parts, and provides that "one of said one-fifth parts shall belong to the children of my deceased sister Mary Ann share and share alike, and if any of such children shall be dead then the share of such child shall belong to the heirs of such child"; and another of the one-fifth parts he provides "shall go and belong to" the children of his deceased brother Thomas, using the same language. He then provides that the remaining three-

fifths shall go to and belong to Martin I. Townsend in trust for the purpose hereinafter mentioned. One of said parts to be held in trust for the benefit of his brother Joseph and his children, income to be paid to Joseph during his life, and upon his death to pay over principal and balance of income to Joseph's children; each child's share, in case of the child's death, to be paid over to the heirs of such child. In the same language another one-fifth is directed to be used for the benefit of his brother James, and another for his brother Stephen.

The codicil to said will reads as follows:

"I provide and direct that when by the terms of said will the equal undivided one-third part of my property shall belong and be payable to my beloved niece Elizabeth B. Douglas, two thousand dollars parcel of said one-third part shall belong to and be paid to Mary A. Douglas daughter of the said Elizabeth B. Douglas.

"Second. I further provide and direct that no portion of my property real or personal shall belong to or be paid to the sons of my brother Stephen or either of them or to their heirs or assigns or to the heirs or assigns of either of them, but that the moneys which in and by said will are provided to be paid to the said sons of my said brother Stephen shall belong and be paid to the daughters of my brother Stephen and their descendants in equal proportions; except that I further provide that from the moneys which would by the terms of said will go to the said sons of my said brother Stephen there shall be paid to Sarah Clark Browne, daughter of Irving Browne of Troy aforesaid, the sum of five hundred dollars and to Henry Townsend Nason, son of Henry B. Nason, of Troy aforesaid, the sum of five hundred dollars and to the religious society which worships in the Methodist Chapel in Tywardreath, in the County of Cornwall, England in which I formerly worshiped the sum of five hundred dollars; and I further provide and direct that if there shall not be of the moneys 'which by the terms of said will would go to be divided amongst the sons of my brother Stephen enough to pay the said legacies to Sarah Clark Browne, Henry Townsend Nason and to said Society worshiping in the Methodist Chapel at Tywardreath, Cornwall, England, that the deficiency shall be taken from the shares which by said will would go to my said niece Elizabeth Douglas so that said three legacies of five hundred dollars each herein named shall be paid in full.

"Third. And I further provide that that portion of my estate which by the terms of my said will as modified by this codicil shall belong to my said niece Elizabeth B. Douglas shall only belong to her for and during her natural life, to be held by her and the income enjoyed by her so long as she live, and at her death the same shall be divided as follows; five thousand dollars parcel thereof shall belong to Francis A. Douglas, son of said Elizabeth; ten thousand dollars parcel thereof to Mary A. Douglas, her daughter; and if there should remain a surplus thereof over and above the said five thousand dollars and the said ten thousand dollars such surplus shall be divided amongst the sons, daughters and descendants of my brothers Joseph, James, Stephen and Thomas, and of my sister Mary Ann, excluding George M. Hitchins son of my brother Thomas and all the sons of my brother Stephen as above and in my said will provided."

Mrs. Hitchins, the widow of deceased, never remarried. She survived her husband 18 years, using only the income of the estate for her support. At her death, February 13, 1902, the principal of the estate, which inventoried $63,547.35 at the death of her husband, was worth much more than that sum.

The Comptroller admits that, if this will created legacies which vested at the death of testator, such legacies are not taxable, although they only now come into the actual possession and enjoyment of the

beneficiaries.  But he earnestly contends that the legacies did not· so vest; that they constitute future gifts, which were not transferred until the death of the life tenant in 1902.  His reasoning is based upon the rule of construction that, where the only words of gift are found in the direction to divide or pay at a future time, the gift is future, not immediate, contingent, and not vested.  Smith v. Edwards, 88 N. Y. 92.  It is important to understand the reason for this rule, and we find it very clearly stated in Dougherty v. Thompson, 167 N. Y. 472–483, 60 N. E. 760, where it is said:

"The direction [to pay or divide] has no reference to the present, and can be executed only in the future; and, if in the meantime the donee indicated shall die, the direction cannot be executed at all."

The correct application of this rule requires us to find a will in which the distribution is provided for by a direction to pay or divide without reference to the present, and which can be executed only in the future, and in the presence of the original donee.  It is not surprising that, if there can be found in any part of the will an intention to make a present gift, this rule of construction yields to such intent; and so the courts search the four corners of each will, and often find the intent to make a present gift in the general scheme of the will, or in single expressions of collective phrases.  Matter of Tienken, 131 N. Y. 391, 30 N. E. 109; Goebel v. Wolf, 113 N. Y. 405, 21 N. E. 388, 10 Am. St. Rep. 464.  The general scheme of this will, the language used, and the conclusions properly drawn from certain facts, convince the mind that the testator intended to, and did, make present and not future gifts.  He made this will in 1868, 16 years before his death, and, although during that time persons interested under it died, he allowed the will to stand without change, excepting by the codicil made in 1871.  He created a life estate in his wife, who, he could easily foresee, might survive him many years, and who in fact did survive him 18 years.  The testator had every reason to believe that a whole generation would pass away before his estate would be distributed, and that if he did not make present, vested gifts to the objects of his bounty, he would have no voice in the ultimate distribution of his large estate. In the sixth clause of his will the testator makes gifts to four persons, and, in case of the death of either, the "legacy" to go to the heirs of the person so dying; and, as to a fifth gift, he says, in case of his death to go to his "heirs and assigns."  In the same clause he provides that, if the whole value of his estate at the time of his death shall be less than $40,000, such "legacies" shall abate proportionately.  Thus he fixes the amount of such legacies with reference to the date of his death, and not the date of distribution, indicating an intention to make the legacies fixed and certain at the earlier date.  By the seventh clause of the will, one-third of the remainder, after the death or remarriage of his wife, he says, "shall go to and belong to my beloved niece * * * her heirs and assigns forever"; and by the eighth clause he disposes of another one-third in the same language.  There are then three gifts made, which, on the death of the original beneficiary, are to go to the "heirs and assigns" of the respective parties.  Surely no stronger

words implying absolute vested gifts could have been used. Other words and phrases found in the will add to the internal evidence that the will contains an intention to make present gifts vesting at the testator's death.

The will has so far been treated as containing a direction for distribution by the method of paying and dividing at the widow's death. But the exact language used is not "pay and divide," but "go to and belong to." In order to bring this will within the rule of construction claimed by the Comptroller to apply to it, he has argued that the words "go to and belong to" have the same meaning as the words "pay and divide." In the will the words "go to and belong to" or "go to" or "belong to" are used ten times, and in the codicil the same number of times, with several times the addition of the words "be paid to." The use of these particular words so many times in one instrument must necessarily convey to the mind a well-defined meaning in their use, which might not obtain if they were used but once or twice. That meaning thus conveyed seems to differ from the meaning of "divide and pay"—a physical cutting up and handing over then for the first time undertaken —by suggesting the fact that something has already been done, by which the "going and belonging to" is the complement. That prior action was the legal transfer of the testator's estate at the time of his death. By the Century Dictionary, we find that "transfer" means "to convey from one person to another; to pass or hand over"—and that "go" means "to move, pass, proceed," and that "belong" means "to be in the power of or at the disposal of." Applying these definitions to the sequence of events provided for in this will, we have the following result: The testator at his death, acting through his will, conveys, passes, and hands over from himself to others all of his property; but, by providing that his wife may use it so long as she lives unmarried, he has interrupted the progress of the actual property to its final destination. When that obstacle is removed by marriage or death, such property "goes"; that is, moves, passes, proceeds, and belongs to; that is, comes under the physical power of, and is at the disposal of, those persons to whom the legal title was transferred at his death. Thus the language used correctly describes the progress of the tangible property from the possession of the testator to that of the beneficiary, and has nothing of the meaning of "paying and dividing." In Roosa v. Harrington, 171 N. Y. 341–350, 64 N. E. 1, there was a direction to "pay," and the question of present or future gift arose. The court found the words "go and belong to" used in the will, and there stated that those words, used in connection with the word "pay," had the effect of enlarging the meaning of "pay" so that it became "equivalent to the direct bequest contained in the other language."

We therefore find that the words "go to and belong to," as used in this will, should not be construed to mean "pay and divide," and that the rule of construction claimed by the Comptroller to be applicable to this will must yield to the manifest intention, both expressed and implied, of making present gifts which vested upon his death.

The law favors such a construction of a will as will avoid the disinheritance of remaindermen who may happen to die before the termina-

tion of the precedent estate. Connelly v. O'Brien, 166 N. Y. 406, 60 N. E. 20.

The creation of a trust in the executrix, if one was created, vested no title in the trustee which would prevent the vesting of an estate in the legatees and remaindermen. Manice v. Manice, 43 N. Y. 303; 1 Rev. St. p. 729, §§ 60, 61.

It is urged by some of the interested parties that the one-fifth of a third of the estate given to the children of the brother Stephen, as modified by the codicil, did not vest in the daughters of Stephen, although they survived the testator, but that such legacy lapsed, and therefore might become liable to the transfer tax. In another memorandum upon that particular question it has been shown that such legacy vested at the death of testator, and therefore such legacy is not taxable. It is now well settled that the tax is upon the transfer of the property, upon the right of succession, not upon the succession itself; that "transfer" means the passing of property, or of any interest therein, in possession or enjoyment, present or future, without regard to whether the actual possession and enjoyment follows immediately or comes at some future time; that where a vested though defeasible interest in remainder passes under a will to the remainderman on the testator's death, though the possession does not pass until the death of the life tenant, the transfer or succession is referred to the time of the death of the testator, and, if that occurred prior to the enactment of the act taxing transfers of property, the remainder is not taxable. Matter of Seaman, 147 N. Y. 69, 41 N. E. 401; Matter of Stewart, 131 N. Y. 274, 30 N. E. 184, 14 L. R. A. 836; Matter of Curtis, 142 N. Y. 219, 36 N. E. 887; Matter of Langdon, 153 N. Y. 6, 46 N. E. 1034.

The order and report appealed from are affirmed.

Order and report affirmed.