Chief Judge Breitel (dissenting).
In a will construction proceeding to distribute the remainder of a residuary trust, the executors of the estate of testator’s wife appeal. Respondents are collateral relatives of the testator’s son, who is also deceased. The testamentary trust, established upon testator’s death in 1920, designated as successive lifetime income beneficiaries, testator’s wife and, after her death, his son. The will further provided that upon the son’s death, the principal of the fund should be paid "to the next of kin of my said son then surviving”. The son died unmarried and intestate in 1933. His mother survived until 1970.
The issue is whether the son’s "next of kin” should be determined as of the date of his death, or alternatively, as of his mother’s death, 37 years later, when the son would have received his life estate had he survived. If the former, then his mother, was his "next of kin” under the intestacy statute; the remainder vested in her in 1933 and could be willed to her devisees, as she in fact attempted to do. The Surrogate ruled, however, that the son’s next of kin should be determined as of his mother’s death in 1970, and ordered the remainder distributed to various collateral relatives. The Appellate Division, one Judge dissenting, affirmed.
I dissent and would reverse the order of the Appellate Division. Unless a contrary intent can be found in additional language or circumstances, the "next of kin” to whom a testator makes a gift are determined as of the death of their designated relative or ancestor. Nothing here negates that presumption. Indeed, in view of the express language of the residuary clause, it is inconceivable that this case should be made an exception to this well-established rule. The son’s only next of kin when he died in 1933 was his mother. The *978 remainder, vested in the testator’s wife, should be distributed in compliance with her will.
By way of preface it merits recognition that the unanticipated brevity of the son’s life and the equally unanticipated longevity of the mother has undoubtedly been at the root of the determinations below. But rules of law, particularly when applicable to the devolution of property over long spans of time, should not be lightly overturned to accommodate to the believed "equities”, a half century after the testator’s or settlor’s death. In future interests there is trouble enough in applying the draftsman’s language to the unanticipated event. It is mischievous to undo the rules which have settled the meaning of provisions governing the determination of a donee class, the vesting of interests, and the contingent interests depending upon survival. In this case, all of the precedents relied upon by the Surrogate and the majority at the Appellate Division rested on language suggesting strongly or showing conclusively a postponement of the time when the donee class was to be determined. On the other hand, precedents using the language adopted by the draftsman of the Van Cleaf will uniformly fixed the "next of kin then surviving” language to refer to the death of the person to whom the next of kin were related.
John C. Van Cleafs will, as of his death on April 4, 1920, divided the residuary of his estate into two trusts. A one-third share was set aside for the benefit of his son, John C. Van Cleaf, Jr., who was to receive income for life, as well as half of the principal upon attaining the age of 30. Upon his death, the balance of the principal was to "be paid to his next of kin then surviving”.
The remaining two thirds of the residuary was set aside for the immediate benefit of the deceased’s widow, Mary E. Van Cleaf, in a trust which is the subject of the instant controversy. The pertinent clause reads in full: "As to the two-thirds share set apart for my said wife, to pay the income therefrom to her during her life and upon her death to my said son John C. Van Cleaf, Jr. Upon the death of my said son, the principal of said fund shall be paid to the next of kin of my said son then surviving.”
Again, the younger Van Cleaf met an untimely death on April 26, 1933, at the age of 23, unmarried and intestate. His mother, as his sole next of kin, then received the principal of her son’s one-third share trust, in accordance with the will. *979 Mrs. Van Cleaf died February 5, 1970, leaving a will purporting to devise the principal of the two-thirds trust created under her late husband’s will, to five different relatives. The Chase Manhattan Bank (N. A.), trustee under the will of the senior Van Cleaf, petitioned the Surrogate for a final accounting and approval of the distribution of the trust remainder to the executors of Mary Van Cleaf s estate.
When a testator wills property to "next of kin”, or "relatives” or "heirs” of a designated person, the members of the donee class are as a general rule ascertained as of the death of the designated ancestor or, in this case, relative, whose "kin” are referred to (see Matter of Waring, 275 NY 6, 10; see, generally, Restatement, Property, § 308; Heirs—Time of Ascertainment of Class, Ann., 65 ALR2d 1408, 1413-1414; 5 American Law of Property, § 22.60). This rule applies with equal force where two or more successive life interests precede the remainder (see Matter of Chalmers, 264 NY 239, 244-246; Heirs—Time of Ascertainment of Class, Ann., 65 ALR2d 1408, 1415-1417).
The rule is almost universally recognized, on the theory that it effectuates the probable intention of the average testator (see 5 American Law of Property, op. cit., § 22.60, p 435). Exceptions are therefore made if the express language of the will, or other circumstances, compel a finding that the testator had a contrary intention (see, e.g., New York Life Ins. & Trust Co. v Winthrop, 237 NY 93, 103-105; see, generally, Restatement, Property, § 308, Comments h-n).
Nothing in the language of the subject clause suggests an intention of the testator to remove his bequest from the ambit of the general rule, postponing indefinitely the ascertainment of the remaindermen. "Upon the death of my said son, the principal of said fund shall be paid to the next of kin of my said son then surviving.” This language is indeed so explicit that it should not need the benefit of the presumption at all (cf. Restatement, Property, § 308, Comment m with Comment n).
That the principal is to be "paid” to the next of kin does not require a different interpretation. The so-called "rule”, if it is indeed a rule, to the effect that a direction to divide and pay, or to pay, or to distribute, at a future time, creates contingent rather than vested interests, does not apply where the postponement of enjoyment is for the purpose of letting in an intermediate interest such as a life estate (Matter of Ablett, 3 *980 NY2d 261, 271; Matter of Crane, 164 NY 71, 76; see Matter of Tienkin, 131 NY 391, 407-409; see, generally, Restatement, Property, § 260; Wills—Divide and Pay Over Rule, Ann., 16 ALR2d 1383, 1390-1392). The distribution to "next of kin” was here conceived as following the son’s life estate, so the use of the term "paid” has no significance with respect to when the "next of kin” are to be ascertained (see Restatement, Property, § 308, Comment o, subd 5).
The circumstances also do not suggest an intention to postpone the vesting of the remainder beyond the son’s death. The inferences to be drawn from the residuary clause are, if anything, quite to the contrary. The senior Van Cleaf apparently sought to keep his estate close to the two members of his immediate family, his wife, Mary, and his son, John, Jr. When Mary died, John, Jr. would become the income beneficiary of her trust. Conversely, and more significantly, Van Cleaf used the exact same language at issue here—"next of kin then surviving”—to assure that if John, Jr. died prematurely, without a family of his own, the principal of his trust would accrue immediately to the benefit of his mother. It would seem only logical that, given this happenstance, the senior Van Cleaf would also have wanted his widow to acquire the power of disposition over the remainder of the two-thirds trust, rather than have the principal pass out of control, at some remote date, to relatives with minimal consanguineal or social ties to himself and his family.
A final consideration against finding that the ascertainment of next of kin was postponed to 1970, is the policy in the law favoring the early vesting of estates over the prolongation of contingent remainders (see Matter of Chalmers, 264 NY 239, 244, supra; 1 American Law of Property, op. cit, §§ 4.33, 4.36). The ultimate distribution, of course, usually relates only to the time of enjoyment.
New York Life Ins. & Trust Co. v Winthrop (237 NY 93, supra [Cardozo, J.]), relied upon by the Surrogate, does not require a contrary result. In that case the court cited compelling reasons to believe that testator intended to postpone the ascertainment of "next of kin” to the date of distribution. The will established successive life estates for the testator’s widow, and, upon her death, for his daughter. The remaindermen were to be the daughter’s "issue”, or, in default thereof, her "next of kin”, and the distribution was to be made only "upon the death of said wife and daughter.” This language itself *981 suggested that survivorship beyond the deaths of both wife and daughter was an implicit requirement for membership in the beneficiary class (p 103).
Moreover, as Judge Cardozo aptly observed, the "next of kin” were only a substitute class in default of the daughter’s "issue”. If the daughter had issue at the time of her death, and the remaindermen were ascertained at that time rather than at distribution, then the substitutionary gift would have failed altogether had the daughter’s issue failed to survive the testator’s wife (p 104).
A similar analysis prevailed in Matter of Bostwick (236 NY 242, 246), involving another trust established under the same will construed in the Winthrop case.
Again, in the Van Cleaf will there is neither language nor a substitute gift problem to suggest that the son’s next of kin be ascertained at distribution. The very language and the presumptive rule here compel a conclusion that the class was to be ascertained upon the son’s death in 1933, vesting the remainder in his mother.
Accordingly, I dissent and vote to reverse the order of the Appellate Division and to remand the proceeding to the Surrogate’s Court for conveyance of the trust remainder to Mary Van Cleafs executors and distribution in accordance with her will.
Order affirmed, etc.