STATE ex rel. FRED M. TOZER and Others v. PROBATE COURT OF
WASHINGTON COUNTY and Another.[1]

November 8, 1907.

Nos. 15,087—(24).[2]

**Inheritance Tax—Transfer to Corporation.**

A., a man of large wealth, organized a corporation and conveyed to it
practically all of his property in return for the issuance to him of all but
four shares of its stock. His wife joined in the conveyances, in considera-
tion of A. agreeing to transfer to her one-third of all the capital stock of
the corporation and to transfer the remainder of his stock to their four
children in equal parts, upon their agreement to lease the same stock to
A. for his life, not to exceed the period of the corporate existence. The
wife also agreed to transfer the stock which she was to receive to the same
children, and they were to lease it to her for her life, on the same condi-
tions. The various conveyances, transfers, and leases were made accord-
ing to the agreements, and the transaction completed January 17, 1903.
At that time there was on the statute books what purported to be an in-
heritance tax law, but which was subsequently declared unconstitutional.
Thereafter a valid inheritance tax law was enacted, which was in force
when A. died in 1905. It was conceded by the state to be immaterial
whether A. was seeking to avoid the future payment of an inheritance
tax by his heirs under the unconstitutional act then on the statute book
or any future law which might be enacted. It was not claimed that any
such intent existed. *Held:*

1. The act purporting to be an inheritance tax law, which was on the
statute books at the time being unconstitutional, the transfers and con-
veyances are to be considered as having taken place when there was no
inheritance tax law in existence.

2. Chapter 288, p. 427, Laws 1905, the present inheritance tax law, has
no application to property which was actually sold and disposed of prior
to the time of its enactment. The validity of a transaction such as here
involved, at a time when an inheritance tax law is in force, is not involved
in this case and is not considered.

3. The children of A., to whom the stock in question was transferred
in consideration of the signing of the conveyances by A.'s wife, became
the legal owners of the stock.

[1] Reported in 113 N. W. 888.                    [2] April, 1907, term.

4. A life estate may be created in personal property, as well as in real estate.

5. The general language used in the leases is restricted by other provisions therein, and by the general scope and purport of the instruments when read and considered as a whole.

6. The leases of the stock from the children to A. vested in A. a life estate in the stock and reserved to the children estates in reversion, which estates were beyond the control of the owner of the life interest.

7. The estates or interests of the children in the stock vested in them at the time of the execution of the leases and came into possession upon the termination of the life estate. The stock was not inherited from A., and the inheritance tax cannot be collected thereon.

In proceedings in the probate court for Washington county to administer the estate of David Tozer, deceased, the state auditor appeared and applied for an order of court fixing a time and place for hearing testimony concerning the value of the estate of the deceased and the value of the inheritances arising out of the same, and for a citation to each of the heirs directing them to appear and testify at such hearing, in order to determine the proper amount of the inheritance tax to be imposed. The facts having been stipulated, as stated in the opinion, the administrators and heirs of the deceased filed objections to the claim of the state for such tax in respect to the shares of stock of David Tozer Company. The court, F. T. Wilson, J., found the facts as stipulated to be true, found the conclusions of law enumerated in the opinion, ordered an appraisal of the capital stock of the David Tozer Company, and appointed appraisers for that purpose. Thereupon the objectors obtained from the supreme court a writ of certiorari to review this decision. Reversed.

*Manwaring & Sullivan,* for relators.

Laws 1905, c. 288, with the exception that it does not impose a tax upon transfers "made in contemplation of death" or "intended to take effect in possession or enjoyment at or after death," is substantially taken from the New York statute taxing transfers by inheritance. McElroy, Transfer Tax, Introd. and c. 3. It is there and elsewhere uniformly held that the taxes imposed are special and not general, and that special tax laws are to be construed strictly against the government and favorably to the taxpayers. "A citizen cannot be sub-

jected to special burdens without clear warrant of law. Any doubt should be resolved in favor of the taxpayer. Matter of Enston, 113 N. Y. 174; Matter of Vassar, 127 N. Y. 1; Matter of Fayerweather, 143 N. Y. 114; Matter of Harbeck, 161 N. Y. 211." McElroy, Transfer Tax, § 7.

In New York, the statute imposed a tax on transfers made "by deed, grant, sale or gift made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor." Laws 1885, c. 483. In 1891 (c. 215) it was amended to provide a tax on transfers "by deed, grant, sale or gift, made in contemplation of the death of the grantor or bargainor, or intended to take effect in possession or enjoyment after such death." And in 1892 (c. 399) these provisions were added: "When any such person or corporation becomes beneficially entitled in possession or expectancy to any property or the income thereof by any such transfer whether made before or after the passage of this act." "All estates upon remainder or reversion which vested prior to June 30, 1885 (when first inheritance law took effect), but which will not come into actual possession or enjoyment of the person or corporation beneficially interested therein until after the passage of this act, shall be appraised and taxed as soon as the person or corporation beneficially interested therein shall be entitled to the actual possession or enjoyment thereof." Laws 1896, c. 908, § 230, as amended by Laws 1899, c. 76. It has there and elsewhere been uniformly held that such statutes are prospective in character, and that a retrospective construction will not be given to them. U. S. v. Leverich, 9 Fed. 586; McClain v. Pennsylvania Co., 108 Fed. 618; Gilbertson v. Ballard, 125 Iowa, 420; In re Seaman, 147 N. Y. 69; Provident v. People, 198 Ill. 495; Re Oyon's Succession, 6 Rob. 504, 41 Am. Dec. 274.

It has also been held in New York under the two statutes last above quoted, which are retrospective in terms, and attempt to tax rights of property which accrued in interest by reason of transactions which occurred prior to the enactment of the statute (although by the terms of the instruments creating such right or interests the possession or enjoyment of the property was postponed until the death of the grantor or donor) and where the death of the grantor or donor occurred after the passage of the statute, that such statutes are unconstitutional

and void as impairing the obligation of contracts and attempts to take private property for public use without compensation.   McElroy, Transfer Tax, §§ 19, 72, 73; In re Seaman, 147 N. Y. 69; In re Craig, 97 App. Div. affirmed 181 N. Y. 551; In re Pell, 171 N. Y. 48; In re Hendricks' Estate, 3 N. Y. Supp. 281; In re Hitchins' Estate, 89 N. Y. Supp. 472, affirmed 181 N. Y. 553.   And that transfers, although made in contemplation of death in a general sense as making provision for wife after death, not taxable, even though made when statute in full force.   Where there is a consideration even of marriage the law does not apply.   In re Baker, 83 App. Div. 530, affirmed 178 N. Y. 575; In re Miller's Estate, 78 N. Y. Supp. 930; In re Demers' Estate, 41 Misc. 470, 84 N. Y. Supp. 1109; In re Thorne, 162 N. Y. 238.   The statute does not apply to gifts inter vivos or advancements.   In re Edgerton's Estate, 54 N. Y. Supp. 700, affirmed 158 N. Y. 571; In re Spaulding, 63 N. Y. Supp. 694, 163 N. Y. 607.   Nor to remainders and reversions created before the enactment of the law, although vesting in possession or enjoyment thereafter.   In re Seaman, supra; In re Gibson, 157 N. Y. 680, 53 N. Y. Supp. 1104; In re Langdon, 153 N. Y. 6.

Our statute in terms imposes a tax only upon inheritances and gifts. Laws 1905, c. 288, § 1.   And nowhere in the statute is a tax imposed or provided for upon any conveyance or transfer of property except inheritances and gifts as such.

The only significance of this omission from the statute in the case at bar is:   (1) This makes it perfectly evident that the legislature did not intend the act to have any retrospective operation.   (2) It was undoubtedly the purpose of the statute in including gifts to prevent evasions of the law taxing inheritances.   The statute is not to be literally construed as to gifts, but is properly applicable only to gifts in the nature of gifts causa mortis or to transactions where the purpose is to evade the statutes taxing inheritances.   Therefore, the statute should not be construed as relating to transactions which occurred prior to its enactment when no tax upon inheritances was in existence and hence no evasions thereof could have been contemplated. (3) The statute is not intended to apply to a transaction like the one at bar, which occurred years prior to its enactment and was founded upon contract, or at least upon a family settlement, which, when made,

was entirely lawful and praiseworthy from every legal and ethical standpoint. In re Spaulding, supra; In re Mahlstedt, 73 N. Y. Supp. 818, 171 N. Y. 652; In re Baker, supra; In re Bullard's Estate, 78 N. Y. Supp. 491, 76 App. Div. 207; In re Crary's Estate, 64 N. Y. Supp. 566, 31 Misc. 72; McElroy, §§ 97-100. A family settlement is a consideration as good and meritorious as a marriage settlement. Tarbox v. Grant, 56 N. J. Eq. 199.

If this transaction occurred subsequent to the passage of the law, then the question of adequacy of the consideration passing between the parties would be material on the question of intent to evade the statute, but the question of adequacy of consideration can have no bearing upon a transaction which occurred when no statute existed to evade.

None of the conclusions of law is sustained by the findings of fact. The conclusions of law and decision of the court below must rest and be sustained, if at all, only upon the facts found as such by the court. The conclusions of law are the mere legal result of the findings of fact. Hodge v. Ludlum, 45 Minn. 290; Knudson v. Curley, 30 Minn. 433; Benjamin v. Levy, 39 Minn. 11; Schneider v. Ashworth, 34 Minn. 426; Wagner v. Nagel, 33 Minn. 348; Miller v. Chatterton, 46 Minn. 338; Noble v. Great Northern Ry. Co., 89 Minn. 147; Danahey v. Pagett, 74 Minn. 20; Smith v. National Credit Co., 79 Minn. 486. And it makes no difference in the above rule that the evidence would justify a finding which would sustain the conclusion of law or decision. The rule imperatively requires that the findings alone be sufficient to sustain the conclusions of law or decision of the court. Benjamin v. Levy, supra. Intent to defraud, or any other intent, such as testamentary intent or intent to evade a tax, is a question of fact and must have a specific finding of fact to sustain it. There is no finding of fact of any intent of any kind in this case, and nothing in the record to sustain any intent of any nature which could invalidate the transfers. The specific facts contained in the stipulation are wholly inconsistent with any possible unlawful or other intent either to evade a tax or that the transaction should be revocable, or testamentary, or conditional. Such specific finding of fact is conclusively inconsistent with the conclusion of law of the probate court

to the effect that the transaction was testamentary in character, and that the children did not acquire any vested right or interest in or to the stock by reason of the contract and transactions of January 17, 1903. The specific finding must control. Wheeler v. Gorman, 80 Minn. 462; Lamberton v. Youmans, 84 Minn. 109; St. Paul Trust Co. v. Kittson, 88 Minn. 38; Barber v. Evans, 27 Minn. 92.

The distinguishing features of all genuine testamentary interests, whatever their form, are: First. They are written with testamentary intent; and second. They are of their own nature ambulatory or revocable during the testator's life. 30 Am. & Eng. Enc. (2d Ed.) 572; Fitzgerald v. English, 73 Minn. 266; 1 Jarman, Wills, c. 2, 18, 20; In re Kopmeier's Will, 113 Wis. 233; Harshbarger v. Carroll, 163 Ill. 636; Shackelton v. Sebree, 86 Ill. 616; Le Sauelnier v. Loew, 53 Wis. 207; Blanchard v. Morey, 56 Vt. 170; Bass v. Bass, 52 Ga. 531; Burlington v. Barrett, 22 Iowa, 60. Tested by the above rules, the conclusion of law of the probate court that the transactions were testamentary is wholly unsustained by the finding of fact. On the contrary the stipulation and findings absolutely negative testamentary intent or the revocable character of the transaction.

There was no inheritance statute in existence at the time the transactions took place January 17, 1903, hence none of the parties can be held to have had any intent or design to evade inheritance tax. No such intent is found or can be claimed. Minnesota Sugar Co. v. Iverson, 91 Minn. 30, 40. Laws 1905, c. 288, must be construed as having only a prospective operation. Laws are not to be construed retrospectively or to have a retrospective effect unless it shall clearly appear that it was so intended by the enacting body, and unless such construction is absolutely necessary to give meaning to the language used. Sutherland, St. Const., § 337; Brown v. Hughes, 89 Minn. 150.

The stipulation and findings of the court conclusively show that the whole transaction was in contemplation of law a contract between David Tozer, deceased, his wife, and their four children, and that the contract was fully executed and performed. If a contract is made on a valuable consideration, the fact that affection is an additional consideration will not invalidate the contract. 1 Page, Cont.,

102 M.—18

§ 272; Thornton, Gifts & Adv., § 4. "The disproportion of the consideration to the value of the thing given is immaterial. If there is some consideration which prompted the transaction it will render that which would have been a gift a contract." Thornton, Gifts & Adv., § 5; Worth v. Case, 42 N. Y. 362; Mercer v. Mercer, 29 Iowa, 557; Thornton, Gifts & Adv., § 7; Selleck v. Selleck, 107 Ill. 389. The mere inadequacy of a consideration does not render it insufficient, and does not affect the validity of the contract. 1 Page, Cont. §§ 274, 322. Transactions between members of the same family which tend to the peace or security of the family and the avoiding of family disputes and litigation, or to the preservation of the family property, are uniformly upheld by the courts even where there is no other consideration. Upon the theory of a family settlement alone there was a sufficient consideration for the transfer of the stock in the manner and at the time it was made. Houghton v. Houghton, 15 Beav. 278; Souverbye v. Arden, 1 Johns. Ch. 240; Scrugham v. Wood, 15 Wend. 545; Tarbox v. Grant, 56 N. J. Eq. 199; Williams v. Williams, L. R. 2 Ch. App. Cas. 294.

The legal title to the stock passed from David Tozer, deceased, to his wife and children as soon as Margaret Tozer parted with the consideration therefor agreed upon between her and David Tozer, deceased, even prior to the transfer on the books of the company. G. S. 1894, § 2799; Baldwin v. Canfield, 26 Minn. 43; Black v. Zacharie, 3 How. 483; Joslyn v. St. Paul Dist. Co., 44 Minn. 183; Prince Inv. Co. v. St. Paul & Sioux City Land Co., 68 Minn. 121; Lund v. Wheaton Roller Mill Co., 50 Minn. 36; Holland v. Duluth, I. M. & D. Co., 65 Minn. 324; National Bank v. Watsontown Bank, 105 U. S. 217; Johnston v. Laflin, 103 U. S. 800; Bank v. Lanier, 11 Wall. 369; Webster v. Upton, 91 U. S. 65; Sargent v. Franklin, 8 Pick. 90; Gilbert v. Manchester, 11 Wend. 628.

The rights and obligations of the parties to the contract having become vested as soon as the contract was entered into and the consideration passed could not thereafter be changed, impaired or divested. Their rights to the stock constituted property, and any attempt to tax such rights on the theory that they were rights to inherit the property from David Tozer, deceased, is an attempt to levy a direct

tax on their property to which they became entitled long prior to the passage of the inheritance tax. Drew v. Tifft, 79 Minn. 175, 179; In re Craig, 97 App. Div. 289, affirmed 181 N. Y. 551; In re Pell, 171 N. Y. 48; In re Seaman, 147 N. Y. 69; In re Miller, 110 N. Y. 216; U. S. v. Leverich, 9 Fed. 586; In re Hendricks' Estate, 3 N. Y. Supp. 281; McClain v. Pennsylvania Co., 108 Fed. 618.

The court below by its decision construed and applied the statute so as to impair the obligation of the contract contrary to section 10, Const. (U. S.) art. 1, and section 11, Const. (Minn.) art. 1; University v. People, 99 U. S. 309, 323; Mobile & Ohio R. Co. v. Tennessee, 153 U. S. 486, 493; McCullough v. Virginia, 172 U. S. 102; Houston & Texas Cent. R. Co. v. Texas, 177 U. S. 77; Washington University v. Rouse, 8 Wall. 439.

Assuming, for the purposes of this argument, that the transaction between David Tozer, his wife and children was in the nature of a gift, even then every requirement of the law of gifts was fulfilled. First: At the time there was no immediate apprehension of death on the part of any of the parties. Second: There was an absolute transfer of the property from David Tozer to his wife and children, taking effect immediately, and fully executed by assignment and delivery of the property and an acceptance by the wife and children. 14 Am. & Eng. Enc. (2d Ed.) 1015; Thornton, Gifts & Adv. §§ 3, 130, 134, 139, 140, 184, 187, 189, 290; 26 Am. & Eng. Enc. (2d Ed.) 861; Reed v. Copeland, 50 Conn. 472; Adams v. Brackett, 5 Metc. 280; Mize v. Bates, 60 Mo. App. 358; Robert's Appeal, 85 Pa. St. 84; Stewart v. Hidden, 13 Minn. 29 (43); In re Schmidt's Estate, 56 Minn. 256; Furman v. Tenny, 28 Minn. 77; Love v. Francis, 63 Mich. 181; Green v. Tulane, 52 N. J. Eq. 169; Davis v. Ney, 125 Mass. 590. Even a reservation of a life interest does not render a gift void. Smith v. Ossipee, 64 N. H. 228; Green v. Tulane, supra; Davis v. Ney, supra; McNally v. McAndrews, 98 Wis. 62; Thornton, Gifts & Adv. §§ 201–208; Love v. Francis, 63 Mich. 181; Duncan v. Self, 5 N. C. 466; Branch v. Byrd, 15 N. C. 142; Adams v. Broughton, 13 Ala. 731; Hope v. Hutchins, 9 Gill & John. 77; Hannon v. State, 9 Gill, 440; Hollomon v. Hollomon, 12 La. An.

607; Calkins v. Equitable, 126 Cal. 531; In re Oertle, 34 Minn. 173; Scrivens v. North Easton, 166 Mass. 255; Seavey v. Seavey, 30 Ill. App. 625; Ranken v. Donovan, 46 App. Div. 225. There could be no revocation without the consent of the children and none is found. Thornton, Gifts & Adv. §§ 105, 122, 184, 187, 189, 191, 205, 206. No power of revocation can be discovered in the leases. In legal effect the transaction cannot be distinguished from what was done in Gustafson v. Gustafson, 92 Minn. 139.

The real question for decision is what was the nature of the transaction between David Tozer, his wife and children, and what rights, if any, in the stock accrued to the children thereby. The solution of this question should be found in the findings of fact of the court below, wholly without reference to the conclusions of law. Hodge v. Ludlum, 45 Minn. 290; Knudson v. Curley, 30 Minn. 433; Benjamin v. Levy, 39 Minn. 11; Schneider v. Ashworth, 34 Minn. 426; Wagner v. Nagel, 33 Minn. 348; Miller v. Chatterton, 46 Minn. 338; Noble v. Great Northern Ry. Co., 89 Minn. 147; Danahey v. Pagett, 74 Minn. 20; Smith v. National Credit Co., 79 Minn. 486.

The facts having been stipulated in the court below and such stipulated facts having been found true and adopted as findings of fact by the court below, the conclusions of law of the probate court are the opinion of that court as to the law of the case.

The findings of the court are inconsistent with any theory of title to the stock in any person or persons except the Tozer children. Can it be that merely because of the passage of this act the transaction will be construed so as to divest them of their title to the stock which accrued in title and interest prior to the passage of the law? The law was passed with reference to the future only and not with a view of undoing past transactions divesting vested rights or impairing the obligations or destroying the force of executed contracts. In re Craig, supra; In re Hendricks' Estate, supra. Even as to transactions occurring after the passage of the law in the nature of gifts inter vivos or antenuptial agreements where, by the very terms of the instruments, possession and enjoyment were necessarily postponed until after the death of the grantor or donor, the New York courts have held that no inheritance tax could be levied even though

such transfers came within the literal language of the statute. Especially is this true in transactions where there is any consideration. In re Baker, supra; In re Miller, 77 App. Div. 473; In re Bullard, 76 App. Div. 207; In re Edgerton's Estate, supra; In re Brandreth, 169 N. Y. 437.

*Edward T. Young,* Attorney General, and *Royal A. Stone,* Assistant Attorney General, for the State.

The transaction cannot be upheld as a gift. Allen-West Commission Co. v. Grumbles, 63 C. C. A. 401, 404. While no claim is made that the gift attempted by Tozer was causa mortis, decisions as to such gifts are in point here, so far as the necessity for delivery and completeness of execution are concerned. In these respects, "the law of the two classes of gifts is identical." 14 Am. & Eng. Enc. (2d Ed.) 1054–1056. Delivery of possession is essential to a gift inter vivos or causa mortis.

The essentials of a valid gift which were lacking from the transaction were: (1) Present intention to make a gift. (2) Delivery of subject matter to donee. (3) Passing of dominion from donor to donee. (4). Gift must be irrevocable. 1. There was no intention to make a gift. The stipulation covers only the understanding between the parties, but is silent as to the intention of the alleged donor, and in the case of a gift it is the intention of the donor which is controlling. 2. There was no delivery, actual or constructive. Whether the transaction be considered as a gift of the stock or only of a remainder therein, a manual delivery of the stock certificates was necessary to validate the gift. 3. No dominion passed to donees. 4. Assuming, without conceding, that anything passed to the donees, the power of revocation remained in the donor.

The transaction was testamentary as to David Tozer and therefore void, because it cannot be upheld as a will. Basket v. Hassell, 107 U. S. 602; Logenfiel v. Richter, 60 Minn. 49; Brown v. Crafts, 98 Me. 40. See also 2 Schouler, Pers. Prop., § 131; Allen v. Allen, 75 Minn. 116; Walker v. Walker, 66 N. H. 390; In re Crawford (N. Y.) 5 L. R. A. 71, and note; note to Beaver v. Beaver (N. Y.) 6 L. R. A. 403; Young v. Young, 80 N. Y. 422; McWillie v. Van Vacter, 35

Miss. 428; Busby v. Byrd, 4 Rich. Eq. 9; Selleck v. Selleck, 107 Ill. 389; In re Bauerschmidt's Estate, 97 Md. 35.

The delivery of a written assignment of corporate stock, or its transfer on the books of the corporation, is ineffectual to perfect a gift where the donor retains the certificate. Casteel v. Flint, 112 Iowa, 92; Getchell v. Biddeford, 94 Me. 452; Jackson v. Twenty-Third St., 88 N. Y. 520; Cummings v. Bramhall, 120 Mass. 552; Allen-West Commission Co. v. Grumbles, supra.

The transaction cannot be sustained as a declaration of trust for the benefit of the children. The true rule is that an intended gift, imperfect at law, cannot be upheld as a trust. Young v. Young, supra; Brown v. Crafts, supra; In re Crawford, supra; Beaver v. Beaver, 6 L. R. A. 404, note.

As an attempt to limit a remainder upon a life estate in personal property, the transaction fails, because "all the rights of ownership" attached to the supposed life estate of David Tozer converted his interest into absolute ownership. Even though a remainder was intended to be vested, it was by gift inter vivos. Therefore, there being no executed gift, no remainder vested in the intended donees. Under the common law, a remainder could not be limited upon a life estate in personal property. While the rule against remainders in chattels has been overriden by the increasing volume, importance and permanency of personal property, it is still the law, we think, that an absolute power of disposition given to a life tenant of personalty converts his interest into a fee. A gift of personal property for life with an unlimited power of disposition added, creates an absolute estate, since an estate in remainder in personal property that shall be left at the termination of a life estate, the tenant of which enjoys an absolute power of disposal, is void. Davis v. Richardson, 10 Yerg. 290; Smith v. Bell, 1 Mart. & Y. 302; In re Burbank, 69 Iowa, 378, 379; Martin v. Foskett, 189 Mass. 368; Bassett v. Nickerson, 184 Mass. 169; Baldwin v. Morford, 117 Iowa, 72, citing In re Proctor's Estate, 95 Iowa, 172; Luckey v. McCray, 125 Iowa, 691.

There is a perfect analogy between the Tozer plan and an absolute devise with a limitation over as to property undisposed of. In such

cases the limitations over are void.  Alden v. Johnson, 63 Iowa, 124, 125;  Killner v. Wuchner, 74 Iowa, 359;  Halliday v. Stickler, 78 Iowa, 388;  Mulvane v. Rude, 146 Ind. 476;  Bradley v. Carnes, 94 Tenn. 27;  Wilson v. Turner, 164 Ill. 398;  Montgomery v. Brown, 25 App. Cas. 'D. C. 490;  Humphrey v. Potter (Ky.) 70 S. W. 1062.

The transaction cannot be upheld as a family settlement and the attempt to do so is inconsistent with, if not an abandonment of, the position that the children have rights which are secured to them by a contract based upon a valuable consideration.  The transaction is not within the definition of a family settlement.  12 Am. & Eng. Enc. (2d Ed.) 875, following Bouvier, Law 'Dict.;  Sauter v. Dollman, 46 Minn. 405.  And the transaction cannot be given effect because it did not settle anything on anyone.

ELLIOTT, J.

Certiorari ·to review the order of the probate court of Washington county appointing appraisers to determine the value of certain stock in the David Tozer Company, which the court decided was owned by David Tozer at the time of his death, ·and therefore subject to the inheritance tax, under chapter 288, p. 427, Laws 1905.  The questions of law involved arise upon stipulated facts.

David Tozer, a resident of Washington county, died intestate at the city of Stillwater on July 26, 1905, leaving as his sole heirs at law his widow, Margaret M. Tozer, his sons, Fred M. Tozer and David Tozer, Jr., and his daughters, Julia A. Tozer and Olive M. Tozer.  David Tozer was born October 25, 1823, and the state claims that at the time of his death he was possessed of property of the value of over $3,000,000.  Letters of administration were granted to Fred M. Tozer and David Tozer, Jr., who duly qualified as administrators and filed an inventory of what purported to be all the property, real and personal.  The state demanded the payment of an inheritance tax upon certain stock in the David Tozer Company, which was not included in the inventory, and which it contends was in fact owned by David Tozer at the time of his death.  The administrators claim that this stock belonged to David Tozer, Jr., Fred M. Tozer, Julia A. Tozer, and Olive M. Tozer, and that David Tozer had no interest in the same.  This proceeding requires us to determine wheth-

er, upon the facts stipulated by the parties and found by the probate court, this stock belonged to David Tozer at the time of his death. If it did, it passed to his heirs under the laws of the state, and is subject to the inheritance tax.

On January 8, 1903, David Tozer, Fred M. Tozer, and D. J. Mc-Cuish organized the David Tozer Company under the laws of the state of Minnesota. The stock of the corporation was divided into three thousand shares of the par value of $100 each. David Tozer subscribed for two thousand nine hundred ninety six shares, and Fred M. Tozer, Julia A. Tozer, Olive M. Tozer, and D. J. McCuish subscribed for one share each. McCuish subscribed for this one share for the benefit of David Tozer, Jr., who at the time of the transaction was absent from the city of Stillwater. When this corporation was organized David Tozer was the owner of valuable pine lands situated in Minnesota, Wisconsin, and Washington, and of a sawmill situated at Stillwater, with the usual logs, lumber, log marks, machinery, logging camps and outfits, and other appurtenances to such business. Immediately after the corporation was organized he, in pursuance of an agreement previously made, offered to convey all his property, except his homestead, immediate personal effects, and a farm, with the personal property thereon, to the corporation, in consideration of the issuing to him of two thousand nine hundred ninety six shares of the capital stock of the corporation for which he had subscribed. The offer was accepted by the corporation with due formality, and the acceptance obligated it to assume all of David Tozer's debts and liabilities. Margaret M. Tozer, his wife, joined in the conveyance of the real estate to the corporation, upon the understanding and agreement that in consideration therefor David Tozer would assign and transfer the two thousand nine hundred ninety six shares of the capital stock of the company received by him for his property to the members of his family in the following proportion: To Margaret M. Tozer, one thousand shares; to Fred M., Olive M., and Julia A., four hundred ninety nine shares each; and to Julia A. Tozer, four hundred ninety nine shares, for David Tozer, Jr.

After the conveyances of the property were made to the corporation, the stock was issued according to the terms of the original sub-

scriptions, and David Tozer, who thus received a certificate for two thousand nine hundred ninety six shares, thereupon indorsed the same as follows: "For value received I hereby sell, assign, and transfer unto Margaret M. Tozer 1,000 shares, Fred M. Tozer 499 shares, Olive M. Tozer 499 shares, and Julia A. Tozer 998 shares, being all shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint Fred M. Tozer to transfer the said stock on the books of the within-named corporation, with full power of substitution in the premises." This original certificate was then canceled, and a new certificate was issued by the corporation to Margaret Tozer for one thousand shares, and a new certificate for four hundred ninety nine shares to each of the four children. Proper transfers were made on the books of the corporation, and the new certificates were issued in compliance with the by-laws of the company.

At the time of the transfer of the one thousand nine hundred ninety six shares of stock to the children as stated, it was agreed by and between all the members of the family, and as a part of the same general transaction, that the transferees of the stock should lease the same to David Tozer for the period of his natural life, not to exceed, however, the life of the corporation. It was also understood and agreed that Margaret M. Tozer should assign the one thousand shares, which she had received as consideration for signing the conveyances to the David Tozer Company, to her four children, each to receive two hundred fifty shares, and that they should then lease such shares to Margaret M. Tozer for the rest of her natural life, by leases in form and substance the same as those given by the children to David Tozer.

Upon receiving the certificates of stock from David Tozer, Fred M., Olive M., and Julia A. Tozer executed separate leases in writing of the stock in question to David Tozer, and Julia A. Tozer assigned the additional certificate which had been issued to her to David Tozer, Jr., subject to the lease thereof to David Tozer. Similar leases were also executed by the children to Margaret M. Tozer of the two hundred fifty shares which each had received from her. David Tozer, Jr., after his return to Stillwater in the spring of 1903, assented to

and in all things ratified the transactions which had been had, and accepted the stock which it was provided should be received by him. These leases were identical in language, except as to the parties thereto and the stock described therein, and that executed by Julia A. Tozer will be used as illustrative of all the others. In view of its importance in this case, we set it out in full as follows:

This Indenture, made this seventeenth day of January, 1903, by and between Julia A. Tozer, of Stillwater, Minnesota, party of the first part, and David Tozer, of the same place, party of the second part.

Witnesseth, that the said party of the first part, in consideration of the sum of one dollar, and other good and valuable considerations to her in hand paid by second party, the receipt whereof is hereby acknowledged, does hereby demise, lease, and let unto the said party of the second part, and the said party of the second part does hereby hire and take from the said party of the first part, the following described property, to wit: The 499 shares of the capital stock of David Tozer Company (a corporation organized, acting and existing under and by virtue of the laws of the state of Minnesota), of Stillwater, Minnesota, which said stock is represented by certificate of stock numbered nine (9), which said certificate is hereby delivered to said second party, together with all rights incident to the ownership of and property represented by said stock, and second party is hereby invested with and shall be entitled to exercise all the rights and powers of a stockholder in said corporation, including the right to vote said stock at all meetings of stockholders, to hold any and all offices to which he may be elected or appointed in said corporation, including the office of director, and to receive and to have for his sole use and benefit all dividends accruing and voted on said stock during the period of this lease, all of which rights, powers, offices, and privileges shall cease and terminate at the expiration of this lease.

To have and to hold the above leased stock, and the rights, powers, and privileges represented thereby, to said second

party, for and during the natural life of said second party, commencing on the day of the date hereof, and not in any case to exceed the period of the corporate existence of said David Tozer Company.

And said first party hereby constitutes and appoints said David Tozer her attorney in fact and proxy for the purpose of voting said 499 shares of stock at any and all meetings of the stockholders of said corporation, and hereby authorizes and empowers said proxy, or such person as he may from time to time appoint and instruct, to vote all or any part of said stock upon any question that may come before any such meeting of stockholders in such manner as he may deem fit; and this proxy is hereby made irrevocable during the period of this lease.

In witness whereof, the parties hereto have hereunto and to a duplicate hereof set their hands and seals this 17th day of January, A. D. 1903.

Julia A. Tozer.    [Seal.]<br>David Tozer.    [Seal.]

In presence of:
    George H. Sullivan.
    F. M. Tozer.

The leases were delivered to David and Margaret Tozer respectively, and pursuant to the provisions contained therein the certificates of stock were delivered to the respective lessees. Immediately thereafter the written leases were filed with the secretary of the corporation, as required by its by-laws. No assignments of the stock or stock certificates were made to the lessees, and upon the face of the certificates and the books and records of the corporation the stock remained in the names of Fred M., Olive M., Julia A., and David Tozer, Jr. The rights and interests of David Tozer and Margaret M. Tozer were matters of record, as the leases were filed with the secretary of the corporation. Thus the rights and interests of all persons interested in the stock clearly appeared upon the records of the corporation, or by instruments filed with the secretary and sub-

ject to inspection. The leases to Margaret M. Tozer, by mutual agreement in writing, were subsequently so modified that she was to receive a fixed annual sum in lieu of dividends on the stock. David Tozer and Margaret M. Tozer continued to enjoy the rights and privileges granted to them by the leases until the death of David Tozer, and Margaret Tozer's rights have not been questioned. After the consummation of the transaction referred to all the persons named participated in the business and management of the corporation, and all except Margaret M. Tozer acted as officers and directors of the company.

It was stipulated and found by the court

> That no other or different arrangement, understanding, or agreement, whether written or verbal, was ever made or existed between David Tozer, deceased, and his wife, Margaret, or any of said children of David Tozer, in reference to said stock, except as herein and in said exhibits set forth.

After the hearing before the probate court and the argument in this court, Fred M. Tozer died, and his wife, Meta F. Tozer, as his sole heir, succeeded to his rights in the stock in question which stood in the name of her husband. The probate court from the stipulated facts found as conclusions of law:

> 1. That Fred M. Tozer, Olive M. Tozer, Julia A. Tozer, and David Tozer, Jr., acquired no vested right or interest of any kind or nature in or to the 1,996 shares of the capital stock of the David Tozer Company, a corporation, which said stock is now represented by stock certificates No. 7, issued to Fred M. Tozer, No. 8, issued to Olive M. Tozer, No. 9, issued to Julia A. Tozer, and No. 16, issued to David Tozer, Jr.; each of said certificates representing and covering 499 shares by reason of the transactions of January, 1903, or any of them.
>
> 2. That the so-called assignment of said stock to them was testamentary in character, and entirely ineffectual as a gift inter vivos or otherwise, and in all things void and of no effect.
>
> 3. That the title and absolute ownership of said stock and all thereof was in David Tozer at the time of his decease, and

that the property thereupon descended by inheritance, as by law provided, to the heirs of said decedent.

4. That, subject to the statutory exemption, the said stock, together with all the other property belonging to or owned by said David Tozer at the time of his death, is subject to an inheritance tax as provided for by chapter 288, general laws of Minnesota of 1905.

We are urged to consider seriously the evils which would result should this court set the seal of its approval upon the transactions in question and thus permit a great property to escape the payment of the inheritance tax.   But we do not consider that the success and efficiency of the inheritance tax law is involved in this case.   That law is prospective in its operation, and it is beyond the power of the state, even if it so desired, to subject to its operation property which the owner in good faith disposed of before his death.   In re Seaman, 147 N. Y. 69, 41 N. E. 401; In re Craig, 97 App. Div. 289, 89 N. Y. Supp. 971, affirmed 181 N. Y. 551, 74 N. E. 1116; In re Pell, 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540, 89 Am. St. 791; In re Hendricks, 3 N. Y. Supp. 281; In re Hitchins' Estate, 43 Misc. 485, 89 N. Y. Supp. 472, affirmed 181 N. Y. 553, 74 N. E. 1118.   The state has not by its legislation attempted to do so.

At the time of the transfers in question there was upon the statute books what purported to be an inheritance tax law; but it provided for a tax of ten per cent., notwithstanding a constitutional provision which prohibited the imposition of a tax of more than five per cent. On July 3, 1903, a few months after the transfer of the stock, this statute was held unconstitutional in State v. Harvey, 90 Minn. 180, 95 N. W. 764.   The act was void from the beginning, and its nominal existence in no way affected the validity of the transactions.   As said by Mr. Justice Field in Norton v. Shelby County, 118 U. S. 425, 442, 6 Sup. Ct. 1125, 30 L. Ed. 178: "An unconstitutional act is not a law.   It confers no rights.   It imposes no duties.   It affords no protection.   It creates no office.   It is in legal contemplation as inoperative as though it had never been passed."   Judge Cooley, in his Constitutional Limitations (7th Ed.) p. 259, says:   "When a statute

is adjudged to be unconstitutional, it is as if it had never been. Rights cannot be built up under it. Contracts which depend upon it for their consideration are void. It constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made." In 1905 another inheritance tax statute was enacted, which was held constitutional in State v. Bazille, 97 Minn. 11, 106 N. W. 93, 6 L. R. A. (N. S.) 732. This statute went into effect more than two years after the organization of the David Tozer Company and the making of the transfers and leases to which we have referred. But it was in force when David Tozer died, and is applicable to all property which David Tozer owned at the time of his death. It is possible that David Tozer and the members of his family at the time of these transactions may have had the possibilities of an inheritance tax in mind; but the law which the state is now attempting to apply was not then in force, and was not enacted until two years and more thereafter. The case, therefore, does not present the question of the effect of a transfer of property with the intention and for the purpose of avoiding the operation of an existing inheritance tax law.

The state questions the effect of the conveyances of the stock upon grounds which are entirely independent of that question. "We concede," says the attorney general, "that if any property rights vested in Fred M. Tozer et al. on January 17, 1903, by virtue of that day's proceedings, such rights are beyond the reach of the inheritance tax law, a subsequent enactment. Our contention is that the colorable and conditional assignment of the stock to the four children, coupled with the immediate redelivery and reassignment thereof (the so-called leases amounting to absolute reassignments) to their father, amounted in law to nothing more than an unexecuted gift, void for want of delivery of the subject-matter to the donee; void because the pretended donor retained the locus poenitentiæ; void because he retained undiminished the jus disponendi, the absolute dominion over the property—in short, in the words of the misnamed leases, 'all rights incident to the ownership' of the stock. We aver that no rights passed from the father to and vested in the children by virtue of the transaction, and that David Tozer remained the absolute owner of the

stock in question until his death, whereupon it passed to his heirs by inheritance under the laws of descent of this state."

It is also expressly conceded, and such is undoubtedly the effect of the decisions, that "whether or not he was seeking to evade an inheritance tax is immaterial. * * * We do not claim that there was any intent to avoid an inheritance tax, considering it immaterial." This question being out of the case, the state is in no better position to question the validity of the transactions between David Tozer and the various members of his family than any party to the transactions. It must be conceded that David Tozer, with the consent of his wife and subject to the rights of his creditors, then had the right to dispose of his property in good faith for any consideration which was satisfactory to him. He could transfer it to his children as a gift or under a contract for a consideration. His motives for making such a transfer are not subject to investigation in a court of law. His object might have been to relieve himself from business cares, to advance the present interests of his children, or to remove the possibility of an unseemly squabble, such as so often arises among the heirs of men of large wealth. Men not infrequently thus dispose of their estates, and the law never questions their right so to do. There are no heirs until after death, and if the owner of property elects to administer his own estate there is no one to deny his right.

We do not think that David Tozer gave this stock to his children. It was transferred under a contract, and as a result the transferees at that time obtained valuable property rights, which were beyond the power of David Tozer to control or withdraw. The organization of the corporation, the David Tozer Company, was legally effected under the laws of the state. The transfers of the property of David Tozer to that company were unquestionably legal and effective, and vested the title to the property in the corporation. The wife joined in the conveyances, and the corporation accepted the property and paid full consideration therefor by assuming the debts of David Tozer and issuing to him two thousand nine hundred ninety six shares of its capital stock. This stock was legally issued, and in the hands of David Tozer it represented the property which he had conveyed. In order to induce his wife to sign the deed and make it possible to

carry the transaction through, he agreed to transfer to her one thousand shares of the stock which he was to receive for the property. She thus received one-third of the total capital stock of the company, which represented her inchoate one-third interest in her husband's estate. As a result of the transaction she became the owner of one thousand shares of stock in the corporation in lieu of her inchoate interest in the estate, which was always subject to the contingency of being defeated by the possible insolvency of her husband and the sale of the property under executions issued on judgments against him. David Tozer's position was also materially changed. Instead of owning all the property, subject to his wife's inchoate interest and her right to refuse her consent to its transfer, he became the absolute owner of personal property which he might dispose of at will without his wife's consent. Margaret Tozer gave a valuable consideration for the one thousand shares which she received, and no attempt is made to question her right to dispose of them as she did. The transfers to the children were absolute in form, and no power of revocation was reserved in terms or by implication.

But the state claims that there was no consideration for the transfer of the stock from David Tozer to the children, and that they therefore under the peculiar circumstances acquired no property rights therein. We think the question of consideration in contracts fully executed before the enactment of the inheritance tax law is immaterial, but there was in fact an adequate consideration for these transfers.

It was not necessary that the consideration should move to David Tozer from the children. When we consider the various agreements and their necessarily dependent character, it may well be said that the consideration for each was the performance of the other agreements. Margaret agreed to sign the deeds and to make the transfers of her stock to the children, who agreed to make the leases therefor back to the mother. David Tozer agreed to transfer one thousand shares of the stock to his wife and four hundred ninety nine shares to each of the children, upon condition that they would execute the leases of the stock to him under conditions which reserved to him the income on the stock and the right of management and control,

which was necessary to secure and protect such income. Margaret Tozer, as the court found, "agreed to, and did, convey her inchoate interest to said David Tozer Company, with the understanding and agreement that said one thousand shares of stock should be transferred to her, and that all of the transfers and instruments hereinbefore recited should be made as herein, and the exhibits hereto stated."

She thus made it a condition to signing the conveyances to the company, and changing her relations to the estate of her husband, that he should transfer one thousand nine hundred ninety six shares of the stock to the children in stated proportions, in addition to transferring the one thousand shares to her.

It is possible that this part of the agreement may have been that which most moved her to act. It is conceivable that the husband may have shown a disposition to favor some of his children at the expense of others. In making a will, he could have made this disposition effective. The desire to protect certain children and to secure to each an equal portion of the estate may have been what most influenced her. It is true that this is conjecture; but the reasons which control in the dispositions of estates are so various and complicated as to compass the entire realm of conjecture. Not knowing the motives which controlled Margaret M. Tozer, we must assume that there were reasons which induced her to stipulate, not only for the stock for herself, but also for the execution of all the instruments and the performance of all the agreements which were essential to complete and effectuate the ultimate object which she and her husband had in view.

It is certain that the various agreements were connected and dependent upon each other. They constituted a part of a transaction the purpose of which was to produce a definite result. Each party to the transaction bound himself to do a certain thing in consideration of the performance by the others of their agreements. Margaret Tozer thus furnished to David Tozer a consideration, and David Tozer therefor agreed to make the transfers of stock to their children. The agreements were all performed. Margaret signed the conveyances and received the one thousand shares, which she distributed among the children, and received from them the leases ac-

cording to the agreement. David Tozer assigned the four hundred ninety nine shares to each child, as he had agreed to do, and the children delivered the leases to him in performance of their agreements. The transaction was completed in every respect according to the mutual agreements of the several parties, and it is impossible to see how these executed contracts, in which all the interested parties acquiesced and still acquiesce, can be successfully attacked by the state, particularly in view of the admission that David Tozer had no intention of avoiding an inheritance tax, and that, even if he had such an intention, it is immaterial, as the inheritance tax law was not at the time in force. Looking at the transaction as a whole, it is evident that it constituted a contract or a number of contracts between David Tozer, his wife, and children in the nature of a family settlement. Such arrangements, which tend to the peace and security of the family and avoid disputes and litigation, have always been favored by the law, and upheld, without other consideration and without much regard to technicalities. Tarbox v. Grant, 56 N. J. Eq. 199, 39 Atl. 378, and cases there cited. Fred M., Olive M., Julia A., and David Tozer, Jr., therefore became the owners of four hundred ninety nine shares each of the stock of the David Tozer Company.

But it is contended that the absolute ownership of the stock was revested in David Tozer by the terms of the leases delivered to him along with the physical possession of the stock certificates. This position is untenable. The leases are all alike, and for convenience we will refer to the one executed by Julia A. Tozer. On January 17, 1903, Julia A. Tozer was the owner of four hundred ninety nine shares of stock. The legal title thereof was in her, and she had possession of the certificate, which was the evidence of her ownership. But she had received the stock on the condition that she would lease it to her father during his lifetime. The use of the word "lease," in connection with the transfer of an interest in personal property, is somewhat unusual; but the purpose of the transaction is clearly expressed by the instrument. It was to convey to David Tozer a life interest in the stock, with an estate or interest in reversion in Julia A. Tozer. At common law estates in real property, with respect to the time of their enjoyment, were either in possession or in

expectancy. The person who had the present enjoyment of that out of which the enjoyment arose had an estate in possession. The person whose enjoyment was postponed had an estate in expectancy, which, however, was created at the same time as that upon which it was expectant. Expectant estates were either in remainder, limited to take effect and to be enjoyed after the particular estate, or in reversion, the residue of the estate left in the grantor or his heirs, to commence in possession after the determination of the particular estate. "A reversion is a vested interest or estate, inasmuch as the person entitled to it has a fixed right of future enjoyment." 2 Washburn, Real Prop. (5th Ed.) 801; Gray, Perpetuities (2d Ed.) §§ 113, 113a; 24 Am. & Eng. Enc. (2d Ed.) 422.

The political and economic conditions under which the early common law developed did not require the application of these doctrines to personal property. The structure of English society made it desirable to control and regulate with strictness the disposition of land and estates therein, and stimulated the creation of particular and dependent estates. But the possession and disposition of personal property had no particular public significance. The amount of such property was insignificant, and capital in forms which produced fixed and regular incomes was practically unknown. As conditions changed, the forms of wealth changed, and it became apparent that there was no substantial reason why such personal property as was permanent in form should not be governed by the same doctrines as real estate. The rules which discriminated between things real and things personal were then gradually relaxed. For a time the desired results were reached by resorting to the devices by which the courts then so frequently secured the desired result without shocking the conservatism of the time by interfering with ancient forms. An exception to the rule, that, if any chattel was assigned to A. for the term of his life, A. would become legally entitled to the whole, was first made as an indulgence in favor of chattels real granted by will. This doctrine was gradually extended to chattels personal, as well as real, until it became the rule that limitations generally by way of remainder after a bequest of personalty for life were good. The next step was to recognize such limitations as good, whether by will or deed, and

finally the rule that a remainder may be limited after a life estate in personal property became, as said by Chief Justice Marshall in Smith v. Bell, 6 Pet. 68, 8 L. Ed. 322, "as well settled as any other principle of our law." See also McLouth v. Hunt, 154 N. Y. 179, 48 N. E. 548, 39 L. R. A. 230; Mills v. Britton, 64 Conn. 4, 29 Atl. 231, 24 L. R. A. 536; Quinn v. Safe Deposit & Trust Co., 93 Md. 285, 48 Atl. 835, 53 L. R. A. 169; De Koven v. Alsop, 205 Ill. 309, 68 N. E. 930, 63 L. R. A. 587; Pritchitt v. Nashville, 96 Tenn. 472, 36 S. W. 1064, 33 L. R. A. 856. It should also be noted in this connection that the by-laws of the David Tozer Company expressly provide for the leasing of its stock in the manner in which this stock was leased.

The language of the instrument under which David Tozer held this stock is that of a lease, instead of a deed. It invests the lessee by its terms with the right and power (1) of a stockholder in the corporation, including the right to vote the stock at stockholders' meeting; (2) to hold any corporate office to which he may be elected or appointed, including that of director; (3) to receive and hold for his sole use and benefit all dividends accruing on the stock during the period of the lease. There is also a specific provision appointing the lessee the attorney in fact of the lessor, with an irrevocable proxy to vote the stock at stockholders' meetings. The time during which the lessee is to have and exercise such powers and privileges is limited to the natural life of the lessee, not exceeding, however, the corporate life of the company. These provisions are such as would be found in an instrument by which the parties intended to create a life interest in the stock in the lessee. But the instrument recites that the stock is delivered to the lessee, together with all rights incident to the ownership of, and property represented by, said stock, and the state contends that this language is so broad that it vested in David Tozer the absolute and unqualified ownership of the stock, with full power of control, including the right of disposition incident to the ownership of personal property. If this language stood alone, the state's claim would be unassailable; but it does not stand alone, and it must be read in connection with the other provisions.

The construction of every writing must be controlled by the intention of the party as expressed therein. In Smith v. Bell, supra, the

supreme court of the United States construed a will which contained the following clause: "I give to my wife, Elizabeth Goodwin, all my personal estate whatsoever and wheresoever, and of what nature, kind, and quality soever, after payment of my debts, legacies, and funeral expenses, which personal estate I give and bequeath unto my said wife, Elizabeth Goodwin, to and for her own use and benefit and disposal absolutely; the remainder of the said estate after her decease to be for the use of the said Jesse Goodwin," the son of the testator. It was held that Jesse Goodwin took a vested remainder in the personal estate, which came into possession after the death of Elizabeth Goodwin. It was conceded that the two parts of the clause were apparently inconsistent, as one expressed an intention to give the property to the wife absolutely and the other to give her a life estate, with remainder to the son. "The first part of the clause," said Chief Justice Marshall, "which gives the personal estate to the wife, would undoubtedly, if standing alone, give it to her absolutely. But all the cases admit that a remainder limited on such a bequest would be valid, and that the wife would take only for life. The difficulty is produced by the subsequent words. They are: 'Which personal estates [sic.] I give and bequeath unto my said wife, Elizabeth Goodwin, to and for her own use and benefit and disposal absolutely.' The operation of these words, when standing alone, cannot be questioned. But suppose the testator had added the words 'during her life.' These words would have restrained those which preceded them, and have limited the use and benefit and the absolute disposal given by the prior words to the use and benefit and to a disposal for the life of the wife. 13 Ves. 444. The words, then, are susceptible of such limitation. It may be imposed on them by other words. Even the words 'disposal absolutely' may have their absolute character qualified by restraining words connected with and explaining them to mean such absolute disposal as a tenant for life may make. If this would be true provided the restraining words 'for her life' had been added, why may not other equivalent words, others which equally manifest the intent to restrain the estate of the wife to her life, be allowed the same operation? The words, 'the remainder of said estate after her decease to be for the use of said Jesse Goodwin,' are, we think, equivalent.

They manifest with equal clearness the intent to limit the estate given to her to her life, and ought to have the same effect. They are totally inconsistent with an estate in the wife which is to endure beyond her life." See also Brant v. Virginia Coal & Iron Co., 93 U. S. 326, 23 L. Ed. 927.

We are cited to several Iowa cases as authority for a doctrine which would require this lease to be construed as an absolute transfer of the stock to David Tozer. We have no disposition to disagree with these cases, in view of the statement in Stivers v. Gardner, 88 Iowa, 307, 55 N. W. 516, that the rule has never been relaxed, that the whole instrument must be considered in arriving at the intention of testator, and that in all the cases where a devise has been held absolute notwithstanding a subsequent limitation it plainly appeared that the devise was intended to be absolute. This statement was approved in Re Estate of Proctor, 95 Iowa, 172, 63 N. W. 670, with the remark that the court was not disposed to extend the operation of the rule to cases not clearly within it.

Our conclusion is that David Tozer had a life estate in the stock, with estates in reversion in the children, who from the time of the delivery of the leases had vested estates in expectancy, of which they could not have been deprived by any act of David Tozer. That interest was valuable property, which could have been levied upon and sold under executions against the owners. It is therefore unnecessary to consider at any length the claim of the state and the conclusion of the probate court that the transfers were testamentary in character. The facts do not justify any such conclusion. David Tozer reserved no power of disposition of the property, and a will made after the transfers, assuming to give this stock to other persons, would have been of no effect.

We have examined this transaction carefully in the light of the information conveyed by the instruments and the facts as stipulated by the parties and found by the court. They must be judged as they appear upon the record, as it is expressly found that "no other or different arrangement, understanding, or agreement, whether written or verbal, was ever made or existed between David Tozer, deceased,

and his wife, Margaret, or any of said children of David Tozer, in reference to said stock." The possibility of the existence of verbal agreements and understandings contrary to the written agreements is thus precluded. It would, of course, be easy to "look at the transaction in a large way," disregard settled principles of legal construction, and assert that David Tozer was attempting to so arrange his property that his heirs would not be required to pay an inheritance tax after his death. But the question is: Did he in fact actually dispose of his property by legal methods, so that an interest passed at the time to the children? If so, they acquired the property by virtue of the transfers, and not by inheritance.

That such was the fact seems clear, and the order of the probate court is therefore reversed.

BROWN, J.

I reluctantly concur in the conclusion reached in this case, and do so only in view of what seems the logical result of the reasoning of the opinion, namely, that a transaction of this character would not be sustained, if made for the purpose of evading a valid inheritance tax law.