### WILMA SHAW AND OTHERS v. GEORGE ARNETT AND OTHERS.
### HENRIETTA ARNETTE, INTERVENER.[1]

June 25, 1948.

No. 34,615.

[1]Reported in 33 N. W. (2d) 609.

*Hansen & Engan,* for plaintiff appellants.

*Mort B. Skewes,* for defendant appellants.
*Frank F. Michael,* for respondent (intervener).

MAGNEY, JUSTICE.

This is an action in partition. Appeal is from the interlocutory judgment and the judgment confirming sale and directing application of proceeds of sale, insofar only as the same determine the ownership of the real estate involved and the proportions in which, and persons to whom, the proceeds of sale shall be distributed by the referees.

1–2–3. George Arnett, a resident of Illinois, his wife joining, on November 9, 1907, executed a deed conveying a half section farm in Rock county to his son Floyd. The controlling clause in the deed reads:

"* * * to their son Floyd H. Arnett of Geneseo, County of Henry and State of Illinois * * *:

"* * * to have and to hold the same during his natural life, with remainder in fee to his children; should he die leaving no child or children, or the descendants of a child or children, then the said lands to revert to the heirs of the grantor herein, * * *."

In simplified form, by the deed, George conveyed, first, a life estate to his son Floyd, second, a remainder in fee to his children, and, third, if Floyd died leaving no child or children or descendants of child or children, then "said lands to revert to the heirs of the grantor herein."

George executed five other similar deeds conveying real estate of the same value to his other four children and one grandchild, the latter the child of a deceased daughter. Each deed expressed a consideration, but no actual consideration was paid by the grantee. George was then 73 years old, and Floyd 24 and single. In 1917, Floyd married Henrietta Arnette, intervener herein. They had no children. George died testate February 22, 1912. As to the property here involved, the provisions of the will and the laws of descent of this state coincide. Margaret Arnett, wife of George, died intestate in 1915. Their heirs were the same five children and the one grand-

child. Floyd died February 14, 1946, intestate, and left intervener as his sole heir at law. She claims a one-sixth interest in the proceeds from the partition sale. In directing the application of the proceeds of the sale, the court allowed her the interest she claimed. Some of the owners of other interests are objecting to the court's order of distribution, claiming that intervener is not entitled to share.

There is but one question for determination here, and that is: Did George retain a reversion in the real estate in question after he conveyed the life estate therein to his unmarried son, who later married but never had children?

If George did retain a reversion, then intervener is entitled to a one-sixth interest as the sole heir of Floyd. If he did not retain a reversion, then intervener has no interest in the proceeds of the partition sale. The statute defines a reversion as "the residue of an estate left in the grantor, or his heirs, or in the heirs of a testator, commencing in possession on the determination of a particular estate granted or devised." M. S. A. 500.09. This is the common-law definition.

As Floyd died leaving no child or children or the descendants of a child or children, the legal effect of the wording of the deed is the same as if the deed had run to Floyd for life with reversion to the heirs of the grantor. The rule at common law is that a grant of a life estate with a *remainder* to the heirs of the grantor is ineffective to create a remainder in such heirs.

In Restatement, Property, § 314, the rule covering this situation is stated as follows:

"When a person makes an otherwise effective inter vivos convey-ance of an interest in land to his heirs, or of an interest in things other than land, to his next of kin, then, unless a contrary intent is found from additional language or circumstances, such conveyance to his heirs or next of kin is a nullity in the sense that it designates neither a conveyee nor the type of interest of a conveyee."

This rule is the doctrine of worthier title as applied to *inter vivos* conveyances, and "will normally result in the retention by the con-

veyor of a reversion in fee simple." *Id.* § 314, *comment d. Illustration* 3 under this section covers our situation. It reads:

"3. A, owning Blackacre in fee simple absolute, makes an otherwise effective inter vivos conveyance thereof 'to B for life then to the heirs of A.' The rule stated in this Section applies and B has an estate for life in possession and A has a reversion in fee simple."

In Patton, Titles, § 133, the writers state:

"* * * The Rule in Bingham's Case [2 Coke's Reports, 91a, 76 Eng. Reprint 611] relates to an attempt of a grantor or testator, after creating a life estate in another, to limit by the same instrument a fee-simple estate in remainder to his own heirs. The limitation is held invalid, and instead he is regarded as having retained in himself a reversion in fee simple. If the heirs ever take from the grantor it will be by descent, and then only provided he has not sold the reversion during his lifetime or devised it to another."

The courts generally hold that a conveyance to the heirs of a living person is not valid, for the reason that a living person can have no heirs. 33 Am. Jur., Life Estates, Remainders, etc., § 197, pp. 670, 673.

The note writer in 28 M. S. A.[2] p. 133, in 1947, quotes from 3 Minn. L. Rev. 340:

"* * * A man cannot convey to himself, or make his heirs, as such, take by purchase what they would otherwise take by descent. The Court of Appeals in New York has lately held that the rule is still law. It is also presumably law in Minnesota, the statutory provisions being the same."

In a commentary on *Future Interests, Uses and Trusts in Minnesota,* found in 28 M. S. A. p. 61, Dean Everett Fraser says:

"It is a rule of the common law that a grantor cannot limit an estate, which apart from the limitation would continue in him or his heirs as a reversion, so that he or his heirs should have it as a remainder. A man cannot convey to himself, or make his heirs, as such, take by purchase what they would otherwise take by descent.

---

[2]West Edition.

This rule has been followed in the United States, but it was abolished in Minnesota by Laws 1939, c. 90, now the last sentence of M. S. A. § 500.14, subd. 4."

Whether this statute (§ 500.14, subd. 4) has the effect above stated we need not determine in this action, as will be seen. The statute reads in part:

"* * * No conveyance, transfer, devise, or bequest of an interest, legal or equitable, in real or personal property, shall fail to take effect by purchase because limited to a person or persons, howsoever described, who would take the same interest by descent or distribution."

In Mowry v. Thompson, 189 Minn. 479, 250 N. W. 52, A delivered certificate of stock to B, orally limiting B's interest in the shares to a life estate and stating the remainder on the death of B should go to C for use during her lifetime, remainder to the children of A. This court held that, since at common law remainders in personal property created by parol limited upon the life estate were void, the property reverted to the donor. Thus an *inter vivos* conveyance for life with ineffective conveyance of remainder leaves in conveyor a reversion. This case, of course, involved personal property. The question has not been determined in this jurisdiction in any case involving real estate. But there seems to be no reason why the same rule should not be applied to conveyances of interests in land, especially in view of the fact that it is the general rule. In some states it has been changed by statute, and appellants contend that it has been done so here.

4. Appellants' position is that the heirs of George took a contingent remainder by the deed and that the heirs of George must be determined as of the time when the life tenant died. Respondents contend that George retained a reversion in this property until his death; that the same descended to his wife and children; and that intervener, being the sole heir of Floyd, would receive Floyd's share as one of the heirs of George. Under appellants' view of the law, the widow of Floyd has no interest in the property, since the heirs of

George must be determined at the time of the death of Floyd, and at that time Floyd was not an heir of George.

Restatement, Property, § 314, *comment c,* covers situations such as appellants here would interpret our facts. *Illustration* 1 thereof reads:

"A, owning Blackacre in fee simple absolute, makes an otherwise effective inter vivos conveyance thereof 'to B for life then to the heirs of A determined as of the death of B.' The rule stated in this Section does not apply because the limitation is not to the heirs of the conveyor at his death."

And *illustration* 2 thereof reads:

"A, owning Blackacre in fee simple absolute, makes an otherwise effective inter vivos conveyance thereof 'to B for life then to the issue of A.' The rule stated in this Section does not apply because the limitation is not to the heirs or next of kin of the conveyor."

Restatement, Property, § 308, has its application here:

"When a limitation is in favor of the 'heirs,' * * * of a designated person, * * * and the persons who come within the term employed to describe the conveyees are to be determined by a statute governing the intestate succession of property, then the statute is applied as of the death of the designated ancestor, unless an intent of the conveyor to have the statute applied as of some other date is found from additional language or circumstances."

*Illustration* 1 under this section is as follows:

"A, owning Blackacre in fee simple absolute, makes an otherwise effective conveyance thereof 'to B for life then to my heirs.' A dies. The designated ancestor is A. The heirs of A are determined in accordance with the applicable local law applied as of the death of A."

The question here, then, is whether the language of the deed of George to Floyd must be interpreted, as appellants claim, so that the heirs of George must be determined as of the date of death of

Floyd, or, as claimed by intervener, that they must be determined as of the date of the death of George.

If appellants' contention is correct that the heirs of George must be determined at the time of the death of Floyd, then, of course, intervener as the sole heir of Floyd has no interest in the fund resulting from the sale of the land in the action for partition. If, however, intervener is right in her contention that the heirs of George must be determined as of the time of his death, then Floyd was an heir of George, and intervener as the sole heir of Floyd would be entitled to the share in the fund which she claims.

5. The determining clause in the deed from George to Floyd reads in part:

"* * * should he [Floyd] die leaving no child or children, or the descendants of a child or children, *then* the said lands to revert to the heirs of the grantor herein, * * *." (Italics supplied.)

The word "then" as used in the above clause can, in our opinion, have no reference to time; it does not mean "at that time," referring to the time of the death of the grantee, Floyd. From its context, it is evident that the word "then" is used as meaning "in such case" or "in that event." If it means "in such case" or "in that event," as we think it does, then the heirs of George must be determined as of the time of the death of George, and not as of the time of the death of Floyd. At the time of the death of George, Floyd was one of his heirs, and intervener, being the sole heir of Floyd, is entitled to a one-sixth share of the partition sale fund.

Norman v. Horton, 344 Mo. 290, 126 S. W. (2d) 187, 125 A. L. R. 531, is relied upon by appellants to sustain their position. However, the case is readily distinguishable from the instant case. The important clause in the Norman case reads (344 Mo. 294, 126 S. W. [2d] 188):

"* * * but should the said Celest— B. Curd die without Bodily Heirs, as aforesaid, surviving her, *then* the title to the above described Real Estate, *at her death*, shall revert to and vest absolutely

in the Heirs-at-law of the said John Herriman, * * *." (Italics supplied.)

It is evident from the wording of the deed that the heirs at law of John Herriman must be determined at the death of Celeste B. Curd, the life tenant, without bodily heirs. There is a time element here involved that is not found in the instant case.

6. Appellants claim that the intention expressed in the George Arnett deed is different from the conclusion reached by the trial court. The deed indicates no intention that those who take should be determined as of the date of the death of the life tenant. No contrary intention can be ascertained from the deed or the circumstances. There is nothing incongruous in holding that Floyd would inherit a share in the reversion as one of the heirs referred to.

7-8. Appellants further contend that M. S. A. 500.14, subd. 4 (L. 1939, c. 90), already quoted, effectively cuts off any interest in intervener; that, since the rule of worthier title never has been declared to be the law in Minnesota, said c. 90 may be applied to deprive intervener of any rights under the law. They contend that until the life tenant died the legislature could by intermediate legislation determine the descent in fee.

Since we have determined that George retained a reversion in fee simple to the land in question, and this retention dates back over 25 years, a subsequently enacted statute cannot change or wipe out his title. Since a reversion is a vested estate, and since the vested estate in question had been in existence for years prior to the enactment of L. 1939, c. 90, the statute can have no bearing on George's title. We are not called upon, therefore, at this time to determine the legal effect of that legislation.

Reversions are vested estates. Dean Everett Fraser, in 28 M. S. A. p. 61, states:

"* * * There are no other restrictions on the creation of reversions than existed by the common law. They are vested estates and are alienable, * * *."

In 2 Dunnell, Dig. § 3163, a reversion is described as a vested interest or estate. It is there stated:

"* * * A reversion is a vested interest or estate, and arises only by operation of law. In the latter respect it differs from a remainder, which arises only by deed or will."

In State ex rel. Tozer v. Probate Court, 102 Minn. 268, 291, 113 N. W. 888, 893, this court said:

"* * * Expectant estates were either in remainder, limited to take effect and to be enjoyed after the particular estate, or in reversion, the residue of the estate left in the grantor or his heirs, to commence in possession after the determination of the particular estate. 'A reversion is a vested interest or estate, inasmuch as the person entitled to it has a fixed right of future enjoyment.' 2 Washburn, Real Prop. (5th Ed.) 801; Gray, Perpetuities (2d Ed.) §§ 113, 113a; 24 Am. & Eng. Enc. (2d Ed.) 422."

9. It follows from the foregoing, in our opinion, that on the death of George his son Floyd would inherit a one-ninth interest in the reversion and on the death of his mother a one-eighteenth interest in the reversion. Upon the death of Floyd, childless, the possibility of the reversion being divested vanished, and a one-sixth interest in the fee title passed to intervener, who inherits the interest her husband had in the property, exclusive of his life estate, and she is now the owner of a one-sixth interest therein.

Judgment affirmed.

MR. JUSTICE KNUTSON, not having been a member of the court at the time of the argument, took no part in the consideration or decision of this case.